[No. 5743.]

JOHN P. CAVE, WM. CRAIG, LELAND STANFORD, AND SEVENTEEN OTHERS v. M. H. CRAFTS, GEORGE CRAFTS, DAVID MEACHAM, IRA LEFFINGWELL, AND MATTHEW BYRNE.

53 135
80 337
53 135
83 655
53 135
95 613
53 135
104 146
53 135
111 397
53 135
116 591
53 135
120 492
53 135
129 147
53 135
136 559
53 135
141 180
141 183
53 135
144 596
53 135
148 764

PLEA OF FORMER JUDGMENT.—A party, in order to avail himself of a former judgment as a defense to a new action, must plead the former judgment.

ADVERSE USE MUST BE PEACEABLE.—An adverse use must be open and as of right, and also peaceable; for if there is any act done by the other owners that operates as an interruption, however slight, it prevents the acquisition of the right by such use.

WATER RIGHTS CONFIRMED BY CONGRESS.—The Act of Congress of July 26th, 1866, "granting the right of way to ditch and canal owners over the public lands," conferred rights to waters appropriated for agricultural purposes, and operates to confirm such rights, initiated and maintained prior to the passage of the Act.

GRANT OF EASEMENTS.—When the owner of lands divides his property into two parts, granting away one of them, he is taken by implication to include in his grant all such easements in the remaining part as are necessary for the reasonable enjoyment of the part which he grants, in the form which it assumes at the time he transfers it. The purchaser is entitled to the benefit of the easement without any express grant or reservation.

GENERAL RULE OF GRANT.—The general rule of law is that when a party grants a thing, he by implication grants whatever is incident to it and necessary to its beneficial enjoyment.

DEFINITION OF EASEMENT.—An easement to real estate granted is a privilege off and beyond the local boundaries of the lands or tenement conveyed.

TRESPASS TO AN EASEMENT.—The averment of an easement will support an action for trespass.

PRACTICE ON APPEAL.—Where a case has been tried upon the assumption that all the material allegations of the complaint were denied by the answer, the parties cannot question the sufficiency of a denial upon appeal.

APPEAL from the District Court of the Eighteenth Judicial District, San Bernardino County.

The complaint alleges that the plaintiffs and defendant M. H. Crafts are, and since May 1st, 1853, have been, the owners of a certain water ditch and water rights, extending from the south bank of Mill Creek, through plaintiffs' farms, and that they have the exclusive right to divert .water from said Mill Creek for agricultural and irrigating purposes; that the defendant M. H. Crafts owns the right to use the whole of the water from three P. M. to nine P. M. of Tuesday and Friday in each week,

and no more, but he has been diverting the water upon other days, greatly to the injury of the plaintiffs, and the other defendants, having no rights in the use of the water, have been wrongfully diverting it, to the great loss of the plaintiffs. The complaint also sets out the individual interests of each of the plaintiffs. The prayer is for an injunction restraining defendant M. H. Crafts from using the water except during the hours designated, and to restrain the other defendants altogether. The defendants Leffingwell and Byrne answered, denying all the allegations of the complaint, claiming ownership by twenty years' continuous adverse use, and alleging that the plaintiffs and Crafts are estopped by a decree of the First District Court, made September 12th, 1864, in the case of *Barton et al.* v. *Willis et al.*, from any interference with the rights of defendants. The plaintiffs replied, denying the defendants' allegations and alleging that on June 20th, 1871, it was decreed in the case of *Folks et al.* v. *Crafts* that the plaintiffs in that action (grantors of plaintiffs in this) were the owners of the right to all the flow of water in said stream for five days in each week, from three to nine P. M., and the defendant Crafts for two days in each week from three to nine P. M.

The defendant Crafts, in his amended answer, averred that the decree had no reference to his rights to the use of water, except as to the water he was owner of for use on his farm, called the " Crafts place "; that in addition he has the right to the flow of one-sixth of said stream from three to nine P. M. of the other five days, by virtue of his ownership of a tract of land on said water-course called the " Carpenter Ranch," and is entitled to the use of a reasonable flow of water for irrigating and domestic purposes for the " See " place and " Criswell " places, which he owns, by virtue of five years open, continuous, peaceable, and adverse use.

The Court below found that the waters of said creek ran along what is called " Mill Creek Wash," and not upon the lands of the plaintiffs or defendants. That said waters had been diverted into the Mill Creek Zanja, and brought through said zanja to the " See," " Criswell," " Crafts," " Carpenter," and " Leffingwell " places, down to the lands known as " Cot-

tonwood Row," and had been used for irrigation purposes. That these tracts were confirmed to José del Carmen Lugo and others in 1865, and the lands of "Cottonwood Row" passed from the original grantors long before any other. That on the 23rd day of June, 1870, in the Seventeenth District Court, in the case of *Crafts* v. *McCoy*, Crafts was decreed to be entitled to the use of three-eighths of all the water running in said zanja each day for four hours. That on March 20th, 1871, in the suit of *Folks* v. *Crafts*, it was decreed that the decree of June 23rd, 1870, be modified so as to allow said Crafts the water for two days each week, from three to nine P. M.

The Court below gave judgment for plaintiffs for costs, and perpetually enjoined defendant Crafts from diverting said waters except for household purposes and watering stock, and except between three and nine o'clock P. M. on Tuesdays and Fridays of each week, and the defendants Byrne and Leffingwell were enjoined from diverting the water except for household purposes and watering stock, etc.

The defendants moved for a new trial, which was denied, and they appealed. The other facts are stated in the opinion.

*Volney E. Howard*, *H. C. Rolfe*, and *H. M. Willis*, for Appellants.

*Waters*, *Swing & Boyer*, for Respondents.

By the Court, McKINSTRY, J.:

There can be no doubt that the appellant Crafts is bound by the decree in *Folks et als.* v. *Crafts*, so far as is concerned any claim on his part to the use of waters by reason of his one-sixth interest in the Carpenter ranch. Even if the same subject-matter were involved in the prior action of *Crafts* v. *McCoy*, the judgment in the prior action was not pleaded as a former determination in *Folks* v. *Crafts*. But the issue was different. In *Folks* v. *Crafts* the question was, what were the rights of the parties with respect to the use of certain waters *when that action was commenced*. *Crafts* v. *McCoy* had been finally adjudged before Crafts acquired his one-sixth interest in the

Carpenter ranch; and Crafts acquired the one-sixth interest prior to the commencement of the action of *Folks* v. *Crafts.* All the rights of Crafts in the waters of the stream, as they existed when the suit of *Folks* v. *Crafts* was brought, were necessarily settled by the decree in that case, since they were, or could have been, there asserted.

Appellant Crafts claims the right to continue the use of water on the "See" and "Criswell" places by reason of *adverse use* for more than five years. It is enough to say that the use of water upon those places—as the case clearly shows—was not peaceable, as that term is applied in connection with the subject we are considering, but was disputed and not infrequently interrupted by plaintiffs and their grantors. "The use," says Wood in his Law of Nuisances, "must also be open, and as of right, and also peaceable; for if there is any act done by other owners that operates as an interruption, however slight, it prevents the acquisition of the right by such use." (9 Cowan, 162; 1 Mees. & W. 100; 3 Nev. & P. 257.)

Appellant Crafts further claims that he is entitled to the use of water not allowed him by the decree of the District Court, as riparian proprietor, by virtue of his ownership of the "See" and "Criswell" tracts. His right to these two places was deraigned at the trial from McDonald and Meacham, who had acquired title thereto as pre-emptioners and purchasers from the United States. The purchase from the Government of the "See" place was consummated December 3rd, 1870, that of the "Criswell" tract on the 27th day of February, 1873. The Court below found that the *zanja*—the waters of which are in dispute—was an artificial conduit through which the waters of the natural stream had been appropriated by plaintiffs and their grantors long prior to the purchase from the Government of the "See" and "Criswell" tracts. The rights thus initiated and maintained by appropriation were confirmed by the Act of Congress "granting the right of way to ditch and canal-owners over the public lands." That act, passed July 26th, 1866, conferred rights to waters appropriated for *agricultural* purposes. (*Basey* v. *Gallagher*, 20 Wall. 670.)

It appears from the findings, that prior to the grant to the

Lugos of the rancho, which includes within its boundaries both the lands owned by the appellants Leffingwell and Byrne, and those at Cottonwood Row owned by plaintiffs, the Mission authorities, (who were agents of the Spanish and Mexican Governments) had conducted the waters from the natural stream to Cottonwood Row, and there employed them for purposes of irrigation; that this appropriation and use was continued by the Lugos until their conveyance to grantors of plaintiffs of lands at Cottonwood Row, and by plaintiffs or their grantors until after the purchase of the Lugos title by appellants Leffingwell and Byrne.

Doubtless while the title of the whole rancho remained in the Lugos, they might have diverted the waters of the *zanja* anywhere within the boundaries of the rancho. But the Lugos, having continued the exclusive appropriation to the lands at Cottonwood Row until the sale and conveyance of such lands, the question arises: Did not the exclusive use of the waters attach as appurtenant to the lands at Cottonwood Row, in such sense, that neither the Lugos nor their grantees of lands on the *zanja* above could divert the waters or deprive the owners of Cottonwood Row of their accustomed use?

In *Lampman* v. *Milks*, 21 N. Y., 505, Denio, J., said: "The rule of the common law on this subject is well settled. The principle is, that where the owner of two tenements sells one of them, or the owner of an entire estate sells a portion of it, the purchaser takes the tenement or portion sold with all the benefits and burdens that appear at the time of sale to belong to it, as between it and the property which the vendor retains. * * * * No easement exists so long as the unity of possession remains, because the owner of the whole may at any time rearrange the quality of the several servitudes; but upon severance by the sale of a part, the right of the owner to redistribute ceases, and easements or servitudes are created corresponding to the benefits or burden existing at the time of sale."

It has been said that the rule as adopted in *Nicholas* v. *Chamberlain* is recognized fully by the Courts of this country. (Wood's Law of Nuisances, sec. 415.) In that case (Cro. Jac., 121) it was laid down: "If one erects a house and builds a

conduit thereto in another part of his land, and conveys water by pipes to the house, and afterwards sells the house with the appurtenances, excepting the land, the conduit and pipes pass with the house, because they are necessary, *et quasi*, appendant thereto."

When the owner of lands divides his property into two parts, granting away one of them, he is taken by implication to include in his grant all such easements in the remaining part as are necessary for the reasonable enjoyment of the part which he grants, in the form which it assumes at the time he transfers it. "If the grantor has already treated this portion as a separate property, the mode in which he enjoyed it, or suffered it to be enjoyed, affords a very proper indication of what rights over his remaining land he intends to pass as accessory to it." (Phear on Waters, 73.)

There can be little doubt that throughout the entire possession of the Lugos the waters were conducted through the *zanja* to Cottonwood Row, and for purposes of irrigation. The use of these waters to the extent, at least, to which they had been previously employed, may have been, and it is fair to presume was, the chief, perhaps only inducement to the purchase by plaintiffs and their grantors. To authorize judicially the diversion and material reduction of the waters, would be a violation of the principle that they took with all the apparent benefits and easements belonging to their purchase. And in cases like the present, the purchaser is entitled to the benefit of the easement without any *express* reservation or grant. (*Pyer* v. *Carter*, 1 H. & N. Exch. and Exch. ch. 916.) The word "appurtenances" is not necessary to the conveyance of the easement. The general rule of law is, that when a party grants a thing, he by implication grants whatever is incident to it and necessary to its beneficial enjoyment. The incident goes with the principal thing. The idea and definition of an easement to real estate granted is, a privilege off and beyond the local boundaries of the lands or tenement conveyed—in the present case, the privilege of conducting the water through the lands retained by the Lugos, the common grantors of the plaintiffs and defendants, by means of the *zanja*. (Angell on Water Courses, 153*a*; 97 Mass. 133;

4 Gray, 379.) The parties at Cottonwood Row having acquired their lands with the use of water, by means of the *zanja* attached, and *quasi* appurtenant to them, no subsequent act of their grantor could divest them of their right.

It is claimed by appellants, that inasmuch as the plaintiffs have alleged in their complaint that they are the owners of the ditch, and have not averred that they are in possession of it, *trespass* cannot be maintained. But the complaint also avers the existence of the easement. The Court below found the existence of the easement only, and this will support the decree.

In the plaintiffs' answer to the cross-complaint there is an attempted denial of the adverse use by defendants Leffingwell and Byrne. The case was tried in the District Court upon the assumption that all the material allegations of the cross-complaint were denied. It has been repeatedly held by this Court under such circumstances, the point that a denial was insufficient could not be made here.

Upon the question of adverse use, continuous and uninterrupted by appellants Leffingwell and Byrne, or by them and their grantors, for the period of five years, the District Court found against them. An examination of the transcript does not satisfy us that the finding was against the evidence.

Judgment and order affirmed.

Mr. Chief Justice WALLACE did not express an opinion.