[L. A. No. 1112. Department Two.—November 30, 1903.]

WILLIAM CRAIG et al., Respondents, v. CRAFTON WATER COMPANY, Appellant.

WATER-RIGHTS—ADJUSTMENT OF RIGHTS IN USE OF DITCH—DOMESTIC USE—FLOW FOR PERIOD OF TIME.—In the adjustment of the rights of the parties to the use of water flowing in a ditch, where the court finds that the rights of the defendant are subject to the rights of plaintiffs to use the water for domestic purposes and for watering stock, it is not reasonable to decree that plaintiffs are

---

[1] 77 Am. St. Rep. 195.

entitled to the continuous flow of any given quantity of water, but there should be an equitable apportionment of such use by allowing a continuous flow for a definite period of time to the plaintiffs entitled to such use.

ID.—RIGHTS BELOW POINT OF DIVERSION.—The plaintiffs, through whose lands the ditch runs below the point of diversion of the defendant, are entitled to all the water remaining in the ditch below such point of diversion, at the time when plaintiffs' diversion begins.    The rights of persons not parties below the plaintiffs' lands cannot be regarded as material as against the defendant.

ID.—CONSTRUCTION OF DECREE—FINDINGS—AGREEMENT OF PARTIES— SELECTION OF PLACE OF DIVERSION—ACQUIESCENCE.—A former decree fixing the rights of parties thereto, is to be construed in connection with an agreement found by the court to have been made between the owner of a ranch and parties below it, that he should use all the waters of a creek on the ranch during certain hours each day, as giving such owner the right to select the place of diversion at the highest point on his ranch; and when it appears that such other parties below acquiesced in such selection, and made an agreement as to their time of diversion accordingly, they cannot complain of such selection by the original owner of the ranch, or by the defendant after he acquired title to the higher part thereof, under deeds from the plaintiffs, regardless of the construction of such deeds.

ID.—APPEAL—REVIEW OF EVIDENCE—SUFFICIENCY OF SPECIFICATIONS— SURPLUSAGE.—A specification of insufficiency of the evidence to sustain a finding, which refers to the finding with sufficient clearness, is not vitiated by reference to a wrong number, and to language of the complaint not found in the finding. Such number and incorrect language may be disregarded as surplusage.

ID.—FINDING UPON SEVERAL POINTS—UNDISPUTED MATTER—RESPONDENT NOT MISLED.—The fact that the finding assailed contained several propositions, but the only disputed matter related to a single proposition, will not vitiate the specification where the respondent was not misled in the preparation of the statement which contains all the evidence.

APPEAL from an order of the Superior Court of San Bernardino County denying a new trial.  Frank F. Oster, Judge.

The facts are stated in the opinion.

Otis & Gregg, and E. R. Annable, for Appellant.

Bicknell, Gibson & Trask, and Curtis & Curtis, for Respondents.

SMITH, C.—This is a suit to determine the several rights of the parties to certain of the waters flowing in the Mill Creek zanja, or water-ditch, in the county of San Bernardino. The judgment was for the plaintiffs. The appeal is from an order denying the defendant's motion for new trial.

The zanja in question runs westerly from Mill Creek, past the point of diversion of the defendant's water, or, as it is called, "the Crafton intake," through the lands of the plaintiffs and others (being parts of the tract known as the Carpenter ranch), to lands in the vicinity of old San Bernardino, known as the Cottonwood Row. These lands and others form parts of the Rancho de San Bernardino, granted in the year 1842 to Lugo and others; and in the year 1876 there was a suit in the district court of San Bernardino County, between the owners, respectively, of the lands of the Carpenter ranch and those of the Cottonwood Row, in which, in June, 1876, there was entered a judgment determining the respective rights of the then owners of the waters of the zanja, which judgment was by this court affirmed. (*Cave* v. *Crafts,* 53 Cal. 135.) The plaintiffs in that suit consisted of Barton and others, owners of lands in the Cottonwood Row, with Cave, Craig, and Standford and associates, owners of Carpenter ranch lands; and the defendants, of Myron H. Crafts, who was also an owner of Carpenter ranch lands, and others whose interests are not involved here. The effect of the judgment was to determine that the owners of the Carpenter ranch lands were entitled to the use of the water in question for irrigation between the hours of three and nine o'clock P. M. of each day, and the owners of the Cottonwood lands, for the balance of the time. But it was also adjudged that these rights were subject to the rights of the owners of the Carpenter ranch lands and other upper proprietors to the use of the water for domestic purposes and for watering stock. By the decree it was also determined that the rights of the owners of the Carpenter lands, as among themselves, were as follows: that is to say, the plaintiff Cave to have the use of the water for one day of the week, and the other plaintiffs (counting Standford and associates as one), and the defendant Crafts, each for two days.

Of the plaintiffs in the present suit, William Craig is the plaintiff Craig of the former suit, and the plaintiffs Charlotte Craig and Payne claim under him. The plaintiffs Bowers and Bean have succeeded the former to two, and the latter to one, of the six hours' use of the water per week, adjudged in the former suit to plaintiff Cave.

The defendant is a corporation, organized in or prior to the year 1886, and it is admitted that, under conveyances from owners of the Carpenter Ranch water-rights—made in consideration of stock of the company, entitling them to the use of specified quantities of water—it has succeeded to the right to divert the waters of the zanja, for irrigation, between the hours of three and nine o'clock P. M., except for the three hours belonging to the plaintiffs Bowers and Bean. But it is found by the court: 1. That this right is subject to the rights of the plaintiffs to use the waters of the creek for domestic purposes and for watering stock; and 2. That the plaintiffs are entitled to the water in the zanja below the Crafton intake at the hour of three o'clock P. M., or, as it is called, "the three-o'clock water," except on Mondays, and on two other days of each ten days; the former being the day on which the plaintiffs Bowers and Bean are entitled to the water, and the latter, days on which the water has habitually flowed to lower proprietors.

1. With regard to the former finding, it is clear that as to the plaintiffs Payne and William Craig it cannot be sustained. For their deeds conveyed to the defendant, without reservation or exception, the right to divert the whole of the water of the creek, so far as owned by them, between the hours of three and nine o'clock P. M. This is probably true, also, of the plaintiff Charlotte Craig; but as her deed to the defendant's grantors is not in the record, this cannot be positively asserted. As to the plaintiffs Bowers and Bean, it appears they have not parted with their right, and hence (unless they are barred by the adverse user of the defendant) they are still entitled to the use of the water for the purposes specified.

But it does not follow—as is also found by the court—that they are entitled to continuous flow of two inches or any other quantity in the ditch (*Wiggins* v. *Muscupiabe etc. Co.,*

113 Cal. 189[1]), and such a requirement, we think, would be un-
reasonable. The flow of water in a stream may, and when
necessary should be, apportioned between the parties inter-
ested "by periods of time rather than by a division of its
quantity" (Id. 190); and artificial means of conducting it
may be allowed instead of the natural channel. (Id. 195-196.)
Or, indeed, it would be in the power of the court to hold.
that the demands of the plaintiffs entitled to water for do-
mestic use are sufficiently supplied by the constant flow of the
water by their places for eighteen hours; to which is to be
added, in case the rights of the plaintiffs to the other water
in question be established, an additional flow of two or three
hours, or perhaps more.

It remains to note that the specification of the appellant
on this point is objected to as insufficient. But we do not
regard the objection as tenable. The specification attempts
to quote the finding objected to, and also to designate its
·number; but, through inadvertence, the number given and
the language quoted is that of the paragraph of the com-
plaint corresponding to the finding, which contains some
words not found in the finding. The finding referred to is,
however, sufficiently clear, and the matter given in the speci-
fication not contained in the finding may be rejected as
surplusage. It is also objected, in effect, that the finding con-
tains several propositions, namely: That the plaintiffs are
the owners of the water-right described; that they have been
such owners for more than twenty years; that they have
always had the water flowing in the zanja on their respective
places; and that they are entirely dependent on the use of
said water, etc. But all these propositions, other than the
first, relate to matters entirely immaterial and to questions
as to which there is no dispute. They could not, therefore,
have misled the respondents in the preparation of the state-
ment, which, in fact, contains all the evidence bearing on the
issue. (*Bledsoe* v. *Decron*, 132 Cal. 312.)·

2. As to "the three-o'clock water," the finding is fully
justified by the evidence; nor would any other finding have
been admissible. The defendant's right, under the deeds of
the plaintiffs and others, is to divert the water of the zanja

---

[1] 54 Am. St. Rep. 337.

from three to nine P. M.; and of this right it has been always
in full possession and enjoyment. It can therefore have no
right to the water in question, which is the water left in the
ditch below its point of diversion at three o'clock P. M., the
moment of the commencement of its right. This was, indeed,
formally admitted by its counsel at the trial; and the court,
we think, was right in regarding the admission as conclusive
of the case.

It is equally clear that the plaintiffs under the terms of
the decree in *Cave* v. *Crafts,* 53 Cal. 135, are entitled to this
water. But were it otherwise, the case would not be altered.
For the plaintiffs, in addition to their rights under the decree,
are vested with the rights of riparian proprietors,—that is to
say, with the rights to use all the waters flowing in the zanja
through their lands when not required for use by the Cotton-
wood people. Nor in a suit against a third party can the
rights of the latter be regarded as material.

This conclusion disposes of the appellant's point that the
column of water in question belongs to the Cottonwood people.
But it will be proper to add that this contention rests upon
an illicit assumption, and that the conclusion does not follow
from the premise assumed. The assumption is, that the plain-
tiffs when they made their deeds were entitled, under the
decree in *Cave* v. *Crafts,* to divert the water only at the
places at which they were then diverting it; and that this was
the right conveyed to the defendant. From which it is argued
that the diversion of the water by the defendant at its
"intake" (which is found to be two miles above the plaintiffs'
lands) was not under the deed, but under the alleged general
right conferred upon it by the law to change the place of
diversion, provided the rights of others were not injuriously
affected. But, assuming this to be the law, it is clear that
this change (which was made without any agreement with
the Cottonwood people) was prejudicial to them, and hence
not permissible. Nor can we conceive of any principle upon
which the Cottonwood people could have acquired, by the
injury done them, any right to the water in question, which,
under the express terms of the decree, belonged to the plain-
tiffs. The Cottonwood people might, indeed, have resisted the
change—a right which they have probably now lost by de-

fendant's adverse user; but otherwise the rights of the parties under the decree were not in any way affected.

Nor do we think the assumed construction of the findings and decree in *Cave* v. *Crafts* correct. In that case it was in effect determined that the Carpenter ranch people were "the owners of all the waters of said Mill Creek, and to have the same flowing in said zanja to and upon their respective lands," during the hours named for each respectively, "being in the aggregate the use of said water between the hours of three o'clock P. M. and nine o'clock P. M. of each day." But this conclusion was based upon and is to be interpreted in connection with the agreement found between the Cottonwood people and Carpenter, when he was owner of the whole of the Carpenter ranch, "whereby it was agreed that the said Carpenter should use all the waters of the zanja from three P. M. to nine P. M. of each and every day." This cannot be otherwise construed than as giving him the right to divert the water at any point from the source down, or at least at any point on his land, which would include the defendant's "intake"—the point at which four sevenths of it had been diverted while Crafts was yet owner, and where it has been diverted by the defendant ever since it acquired title. We must conclude, therefore, that the effect of the decision was to accord to the plaintiffs and their co-proprietors the right to divert the water at any point on the Carpenter ranch; and whether the plaintiffs' deeds to the defendant be construed as referring to the "Crafton intake" or as leaving the point of diversion to the choice of the defendant, they were entirely within their rights; and the Cottonwood people had no cause to complain. This construction of the decision of the court, and of the agreement on which it rests, is confirmed by the acquiescence of the Cottonwood people in the defendant's act; and by the reference in the findings to the fact that the points of diversion used by the Carpenter ranch people were at distances ranging from one and one half to seven miles above the point used by the Cottonwood people; and by the provision in the findings based on an agreement between the Cottonwood plaintiffs fixing the hour of four o'clock A. M. as the beginning point of the use of the water by them. This allows seven hours from the shutting off of the water by those

of the Carpenter ranch at nine P. M.,—a period altogether
unnecessary otherwise than upon the theory that it was the
understanding that the whole of the water might be diverted
at the highest point, which is now the "Crafton intake."

This view of the case, renders it unnecessary to consider
other points discussed in the briefs; and it remains only to
consider the proper judgment to be entered on the views ex-
pressed.  This must be, that the order appealed from be re-
versed, and a new trial ordered, unless the plaintiffs be
willing to forego their claims to the use of water for house-
hold purposes and watering stock, except so far as secured
to them by the eighteen hours' flow of the water to the
Cottonwood people, and by the decision in their favor
as to the "three-o'clock water"; but if, as will probably be
the case, they should be willing to do so, the order should be
affirmed.

For the reasons stated we advise that the order appealed
from be reversed, and the cause remanded for a new trial,
unless the plaintiffs within thirty days, or such further reason-
able time as may be allowed by the court below, shall file
their written consent, after service of a copy on the defend-
ants, that the judgment be modified by striking therefrom
the following words, occurring in the first paragraph of the
adjudication, viz.: "and (2) from diverting, interfering with,
or in any manner preventing a continuous stream of two
inches of water of said creek, measured under a four-inch
pressure, from flowing in said zanja at all times to and upon
the said farms of plaintiffs for their household use and for
watering their stock"; and it is further ordered that, upon
the filing of such written consent within the period prescribed
by this court, or by the order of the court below, and the
modification of the judgment in accordance therewith, the
order appealed from shall stand affirmed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the order
appealed from is reversed, and the cause remanded for a new
trial, unless the plaintiff, within thirty days, or such further
reasonable time as may be allowed by the court below, shall
file their written consent, after service of a copy on the

defendant, that the judgment be modified by striking therefrom the following words, occurring in the first paragraph of the adjudication, viz.: "and (2) from diverting, interfering with, or in any manner preventing a continuous stream of two inches of water of said creek, measured under a four-inch pressure, from flowing in said zanja at all times to and upon said farms of plaintiffs for their household use and for watering their stock"; and it is further ordered that, upon the filing of such written consent within the period prescribed by this court, or by the order of the court below, and the modification of the judgment in accordance therewith, the order appealed from shall stand affirmed.

McFarland, J., Lorigan, J., Henshaw, J.