[S. F. No. 5872. Department Two.—December 30, 1912.]

JERSEY FARM COMPANY (a Corporation), Respondent, v. THE ATLANTA REALTY COMPANY (a Corporation), Appellant.

EASEMENTS—ENUMERATION OF SERVITUDES IN CIVIL CODE NOT EXCLUSIVE. Section 801 of the Civil Code, by its specification of certain kinds of servitudes, does not purport to enumerate all the burdens by way of servitudes that may be attached to land for the benefit of the dominant tenement.

ID.—SALE OF PORTION OF LAND SUBJECT TO BURDENS OR BENEFITS—RESULTING EASEMENTS AND SERVITUDES.—It is a general principle that where the owner of two tenements sells one of them, or the owner of the entire estate sells a portion of it, the purchaser takes the tenement or portion sold with all the benefits and with all the burdens that appear at the time of the sale to belong to it as between it and the property which the vendor retains. This principle is embodied in section 1104 of the Civil Code, and its application is not limited to the list of servitudes and corresponding easements enumerated in section 801.

ID.—LAND SUBJECT TO ENTIRE RECLAMATION SYSTEM—SALE OF PORTION INCLUDING MAIN PLANT—EASEMENT IN FAVOR OF REMAINDER OF TRACT—INJUNCTION.—Where an entire tract of land is subject to a single, complete system of reclamation, of which the surrounding

levee, the main drainage canal to which all other drainage canals led, and a pumping plant to eject the surplus waters, are essential parts, and the portion thereof including the main drainage canal and the pumping plant is sold, an easement is created in favor of the remaining portion of the tract to use the parts of the reclamation system situated on the land conveyed in the same manner and to the same extent as the same were used at the time of the transfer. An interference with the use of such easement will be enjoined.

ID.—TRANSFER BY TRUSTEES UNDER DEED OF TRUST.—It is immaterial to the creation of such easement, that at the time of the segregation of the land the entire tract was subject to a deed of trust, and that the transfers were executed by the trustees in pursuance of its terms.

ID.—PRELIMINARY INJUNCTION—RESTRAINING INTERFERENCE WITH USE OF EASEMENT—EVIDENCE LIMITING EFFECT OF QUITCLAIM DEED.—On an application by the owner of the dominant land for a preliminary injunction restraining the owner of the servient land from interfering with the use of such easement, parol evidence is admissible tending to show that a quitclaim deed of the servient land executed by the former to the latter, and which the latter claimed operated as an extinguishment of the easement, was not intended to have that effect.

APPEAL from an order of the Superior Court of Contra Costa County granting a preliminary injunction. R. D. Latimer, Judge.

The facts are stated in the opinion of the court.

J. C. Meyerstein, H. U. Brandenstein, and A. B. McKenzie, for Appellant.

A. L. Shinn, and M. R. Jones, for Respondent.

HENSHAW, J.—This appeal is from an order granting a preliminary injunction restraining defendant and appellant from interfering with the repair and maintenance by plaintiff of a levee and from interfering with the use and repair of a drainage canal and pumping plant, all situated upon the land of the appellant.

The controversy arises under the following facts: There is in the county of Contra Costa a tract of land comprising over three thousand nine hundred acres which in the state of nature is overflowed by the waters of the San Joaquin River. This land unreclaimed, is valueless, reclaimed, is very valu-

able. Years ago it was reclaimed by its then owner, the reclamation consisting of the construction of a levee around the exterior boundaries of the tract and the excavation of drainage canals conducting the water to the lowest part of the tract where a pumping plant was erected, and the excess water pumped out of the canal and off the land. The levees, canals, ditches, and pumping plant were constructed, installed, and operated as a single indivisible system for reclaiming all of the land and they are still indispensable for its use and cultivation. In 1907 Nathan Fisher was the owner of the land. He made a deed of trust to Archibald Kains, trustee for the benefit of Myra E. Wright, beneficiary, to secure the payment of a sum of money owing by Fisher to Wright. The deed of trust contained a provision empowering Nathan Fisher or his grantee to demand reconveyance of any portion of the tract in lots of not less than fifty acres on the payment of a certain specified sum of money per acre. Herman Bendel by mesne conveyances succeeded to the title and rights of Fisher and tendering the requisite amount of money demanded from the trustee a reconveyance of fifty acres. The fifty acres whose reconveyance was thus demanded was the lowest land of the tract. Upon it was established the pumping plant to which pumping plant by a main canal were conducted the surplus waters of the whole tract. The exterior protecting levee extended along the river frontage of this tract. The trustee refused to make the conveyance and Bendel brought suit to compel him to do so. A decree was given commanding the execution of the deed which the trustee thereupon executed. Subsequently Bendel conveyed this fifty acres to the defendant and appellant herein. Previous to the execution of the trustee's deed to Bendel the trustee had executed under the terms of his trust a deed of all of the rest of the tract to Myra E. Wright. To all the interest of Myra E. Wright in this land plaintiff has succeeded. Defendant refused plaintiff admission to its lands for the purpose of maintaining the outer levee upon the lands, of maintaining and using the drainage canal, and of maintaining and using the pumping plant to expel waters from the drainage canal. Plaintiff insisted upon its right to enter the land of appellant for these purposes. The injunction forbade defendant from interfering with plaintiff in the exercise of its asserted rights.

Appellant's first proposition is that section 801 of the Civil Code enumerates all the burdens by way of servitudes which may be attached to land for the benefit of the dominant tenement and that the burdens imposed by the decree upon its land do not come under any of the classifications enumerated in that section; that the only other section which can have reference to the matter is 1104 of the same code which declares: "A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed." This section, it is said, affords no ground for the relief awarded to respondent for, it is argued, the easements contemplated by section 1104 are such, and such only, as are classified and enumerated in section 801. This, however, we think to be an incorrect construction of the two sections. The ingenuity and foresight of the legislature would be taxed in vain to name and classify all the burdens which might be imposed upon land. By section 801 it enumerated some of them. By section 1104 it declared generally that in the case of a transfer of real property other easements may spring into existence, easements which could not be enumerated for the very reason that they embrace every burden which by virtue of the manner of use has been imposed upon the portion of the estate not granted in favor of the portion granted. It is a direct recognition of the principle long established and fully recognized by this court (*Cave* v. *Crafts*, 53 Cal. 135; *Quinlan* v. *Noble*, 75 Cal. 250, [17 Pac. 69]), that principle being that "where the owner of two tenements sells one of them, or the owner of the entire estate sells a portion of it, the purchaser takes the tenement or portion sold with all the benefits and with all the burdens that appear at the time of the sale to belong to it as between it and the property which the vendor retains." It is this general principle which is given full recognition by section 1104 and its application is by no means limited to the list of servitudes and corresponding easements enumerated in section 801 of the Civil Code. It follows, therefore, that the character of the burden imposed upon the

servient tenement is not controlling, that it is of no conse-
quence whether that particular burden will fall into or can
be forced into any of the seventeen subdivisions of section 801.
If it be a burden obviously cast upon the land at the time of
the segregation of the title it remains a burden upon that
land in favor of the other parcel, and it is an "easement"
within the meaning of section 1104 even if it does not come
within the limitations of section 801 because section 1104 it-
self designates it an easement.   We have before us, then, one
complete scheme of reclamation to which the surrounding
levee was an essential part, the main drainage canal upon the
fifty acres to which all the other drainage canals led another
essential part, and finally, and quite as indispensable, the
pumping plant to eject the surplus waters.   It would work
the destruction of the whole plan to recognize the easement of
any of these essentials and not of all.   Nor, it may be added,
is the right to use a pump under such circumstances a unique
burden upon land in the history of the law.   Similar cases
may be found in *Seymour* v. *Lewis,* 13 N. J. Eq. 439, [78 Am.
Dec. 108] ; *Larsen* v. *Peterson,* 53 N. J. Eq. 88, [30 Atl. 1094].
It is a matter of indifference to the conclusion thus reached,
whether the trustee of the whole tract be considered as the
absolute owner at the time of the transfers, or whether the
successor in interest of Nathan Fisher, the trustor, be con-
sidered the owner.   In the one case the trustee deeds all of
the tract saving the fifty acres to Myra E. Wright and in
favor of the land thus conveyed to her springs up the ease-
ment to use the remaining fifty acres for the indicated pur-
poses.   The later conveyance of the fifty acres would of
course be subject to these easements.   Precisely the same con-
struction would obtain if Nathan Fisher or his grantee be
treated as the owner of the whole tract at the time of the mak-
ing of the deeds.   The deeds by the trustee would then, in
effect, be nothing more than deeds by an agent and the same
legal result would follow.

Appellant further contends, however, that even if the ease-
ments claimed by plaintiff be found to have, or rather to have
had an existence, they were extinguished by the deed of Myra
E. Wright, predecessor in interest of plaintiff.   This conten-
tion rests upon the following facts: Myra E. Wright in July,
1909, through the trustee's deed became the owner of all the

tract excepting the fifty acres subsequently conveyed to
Bendel. In that fifty acres after demand by Bendel of the
trustee for a deed with tender of the money she had no in-
terest other than what may be described for convenience as
a mortgagee's interest. The decree awarding Bendel the fifty
acres was made on the twenty-fourth day of November, 1909.
It would appear that the court's decision had been indicated
earlier than this date for the trustee's deed to Bender was
dated and acknowledged on November 22, 1909, and a quit-
claim deed and release to Bendel from Myra E. Wright and
her husband was given, which deed was dated and acknowl-
edged on November 20, 1909. Upon these facts appellant
argues that the release of Myra E. Wright to plaintiff is
to be construed by its terms and by its terms alone; that
"release" is the appropriate word to be used for the extin-
guishment of an easement; that a deed by the owner of the
dominant tenement to the owner of the servient tenement ex-
tinguishes easements and that the inevitable result is that
whatever burdens and servitudes existed upon the Bendel fifty
acres were by the deliberate act of Myra E. Wright released
and extinguished. Over these general principles there can be
no controversy. (*Durkee* v. *Jones*, 27 Colo. 159, [60 Pac.
618]; 14 Cyc. 1191; Jones on Easements, sec. 845; Devlin
on Deeds (2d ed.), sec. 27.) The court, however, received
evidence of the circumstances under which the deed of quit-
claim and release was executed and from this evidence con-
cluded, as it had the right to do (Code Civ. Proc., secs. 1860,
1861), that "release" was not employed in its technical sense
for the extinguishment of the easements but that the instru-
ment of quitclaim and release was made only for the purpose
of carrying into effect the provisions of the trustee's deed and
of giving to Bendel simply the title which the trustee's deed
justified him in demanding. The evidence upon this point is
that the right to appeal from the court's decree existed in
favor of Myra E. Wright, that her quitclaim deed preceded
in date the deed of the trustee to Bendel, that there was no
mention in the deed of easements or servitudes and no indi-
cation other than that contained in the use of the word "re-
lease" of any intent to extinguish the servitudes. There is
positive testimony by the husband of Mrs. Wright who joined

CLXIV. Cal.—27

in the release that the sole purpose of it was to end the litigation, to fortify the trustee's deed and to give to Bendel just such title as he was entitled to take under the trustee's deed and no more; that a previous sale under the deed of trust had been made to Myra E. Wright and the quitclaim was further designed to relieve the Bendel land from all question of the effect upon it of this previous sale.

For these reasons the decree and the order appealed from are affirmed.

Melvin, J., and Lorigan, 'J., concurred.

Hearing in Bank denied.

In denying a hearing in Bank the court in Bank rendered the following opinion on January 29, 1913.

THE COURT.—The petition for rehearing is denied. In answer to the proposition argued in the petition, that the effect of the court's decision is to permit declarations of the intent of the grantor in making the deed to control the language of that instrument, it is proper to point out that the hearing before the trial court was solely to determine whether or not a preliminary injunction should be granted. The language of this court was addressed solely to the case made in the trial court upon that hearing—a hearing which was had principally upon affidavits. The defendant having set up the quitclaim deed in its answer, it was open to plaintiff to meet and overcome its legal effect in any appropriate way. It did this by evidence tending to show that the quitclaim deed owed its existence to a mistake in law upon the part of the grantor, taken advantage of by the grantee. It is, of course, true that where an instrument is sought to be avoided for fraud or for mistake in law or in fact, evidence is admissible as to what the grantor intended to do or to convey (Civ. Code, sec. 1578, subd. 2.) Therefore, what is decided upon this appeal is that enough was shown to have justified the court in granting the temporary injunction. Whether the reformation of the deed is required; whether, if required, it may be accomplished under the implied replication to defendant's answer, or whether a separate action seeking affirmative relief on this ground should be brought by plaintiff, are one and all ques-

tions whose consideration pertain to the principal case when that case comes to be tried upon its merits and formal findings are made. Therefore those questions are left until that time.