[Civ. No. 2720.   First Appellate District, Division Two.—February 14, 1919.]

ERNST KALLENBURG et al., Appellants, v. EMERY LONG et al., Respondents.

EASEMENTS — RIGHTS OF PURCHASER — RULE OF PROPERTY.—The rule that where the owner of two tenements sells one of them or the owner of the entire estate sells a portion of it, the purchaser takes the tenement or portion sold with all the benefits and with all the burdens that appear at the time of the sale to belong to it as between it and the property which the grantor retains, has become a rule of property in this state as forceful as the rule in regard to the rights of lower riparian owners or the mutual obligations of coterminous owners.

ID.—WATERS AND WATERCOURSES — DISCHARGE OF SURFACE WATER.— Where the owner of a tract of land sells a portion, and at the time of the division there exists the right to discharge surface water from the upper portion on to the lower, the conveyance of the lower lands carries with it the implication of a reservation of the servitude.

ID.—CHANGING NATURE OF FLOW — RESTRICTION ON RIGHTS OF UPPER OWNER.—An upper owner may not by artificial means collect the surface waters into a single channel where they have not flowed before and precipitate them in a volume on the servient tenement.

ID.—DISCHARGE OF WATERS UPON SERVIENT TENEMENT OPENLY AND NOTORIOUSLY.—Where, as in this action for damages for damming back surface waters and to enjoin further interference with their flow, the waters had for some fifteen years prior to the acquisition by the defendants of their lands been discharged upon these lands openly and notoriously, it must be held that the defendants accepted their conveyance subject to such easement.

APPEAL from a judgment of the Superior Court of Napa County.   Henry C. Gesford, Judge.   Reversed.

The facts are stated in the opinion of the court.

Clarence N. Riggins for Appellants.

E. S. Bell and P. O. Solon for Respondents.

BRITTAIN, J.—The plaintiffs sued for damages caused by damming back surface waters and for injunction against further interference with their flow.   The complaint was in

two counts based upon different theories of the plaintiffs' right to maintain the action. A general demurrer to the complaint and to each cause of action was sustained as to both causes of action, and upon plaintiff's refusal to amend, judgment was entered for the defendants. The plaintiffs appeal.

All the facts are set forth in the second count. The demurrer went to the root of the case. If upon all the facts the plaintiffs are not entitled to maintain their suit, it would be idle to send the case back for further proceedings by the application of a technical rule of pleading to a partial statement of facts in the first count. This is the typical case where upon a single series of facts the plaintiffs are in doubt upon which of several theories they might recover; not one where in the different counts they seek to recover for several infractions of distinct rights.

Disregarding the legal phraseology, the essential facts are that formerly a watercourse extended in a general easterly direction from the hills on the westerly side of the Napa Valley to the Napa River. This watercourse carried the surface waters from adjacent lands sloping toward it, and in its course it passed through the lands now owned by the plaintiffs to and thence through the lands now owned by the defendants.

Formerly the plaintiffs' and defendants' lands, with other lands west of plaintiffs' lands and higher on the slope, were owned by a single proprietor. On the east or lower side of defendants' lands runs, in a general northerly and southerly direction, the tracks of the Southern Pacific Railroad Company. West of the plaintiffs' lands and separated from them by lands originally part of the entire tract, but now held by third parties, runs the county road between St. Helena and Calistoga. About twenty-five years ago, while all the lands were in one ownership, the proprietor, at a point west of plaintiffs' lands, dug a ditch from the natural watercourse southeasterly along the county road to the present southeasterly boundary of what are now the lands of the plaintiffs and the defendants, and thence along the boundary to and across the tracks of the Southern Pacific Railroad.

It is alleged that by this ditch all the water flowing in the natural watercourse, of course, above the opening of the

ditch, was diverted so as to run through the ditch. The
ditch also drained the surface waters from the southeastern
part of the tract, which must have been a part, at least, of
the defendants' lands and possibly a part of the plaintiffs'
lands. If nothing else had been done, the surface waters
below the opening of the ditch would have continued to flow
in the old natural watercourse. At the time the ditch was
opened, "for the purpose of providing for the drainage of
the surface waters from the remainder of the tract, and
disposing of the surface waters thereof, the owner also con-
structed a covered drain" across the tract northeasterly to a
point on what is now the plaintiffs' land. In constructing
the covered drain he used the channel of the natural water-
course. From the end of the drain the waters it carried
drained along the channel of the watercourse over the lower
portion of the plaintiffs' lands and the defendants' lands to
the Southern Pacific tracks, where they flowed into a ditch
necessitated by reason of the obstruction of the natural
watercourse by the railroad tracks, east of and below the
defendants' lands. At the time the drain was built the
owner "arranged that the surface water of said tract which
had, up to this time, drained into said watercourse, should
continue to drain into the same, by placing tiling through the
said tract connected with said covered drain in such a man-
ner that it would drain said surface waters into the same,
so that the surface water from the entire tract was drained
off of said land along the channel of said watercourse." It
is further alleged that "said surface waters from said tract
had always been drained therefrom along the channel of
said watercourse." From the opening of the covered drain
on the plaintiffs' land the water flowing in the old channel
during the greater part of each year was open, obvious, and
in plain sight. The drainage system was continuously in
use from its construction until the winter of 1916-17, when
the channel of the old watercourse was dammed by the de-
fendants. The dam caused the surface waters to be backed
on to plaintiffs' lands to the injury of the trees of a growing
orchard.

In 1906 the owner of the land between the county road
and the railroad tracks, having subdivided the tract, sold the
lower, eastern portion of it to the defendants. Thereafter
he sold the remaining portions to other persons, from whom

the plaintiffs acquired their lands more than five years before this action was commenced.

The appellants base their claim of right upon three theories. First, it is maintained that by the dam the surface waters which have always been accustomed to flow from the plaintiffs' to the defendants' lands were turned back. To this the respondents urge that in plaintiffs' first cause of action, which was drawn on this theory, the failure to allege that the waters flowed *naturally* constituted a fatal defect. Secondly, the appellants rely upon the theory that the dam was an obstruction to an easement reserved by implication upon the division of the land formerly held in single ownership. To this the respondents reply that in this state, when what would otherwise be the servient tenement is granted without express reservation of the easement, no servitude by implication is impressed upon the land granted. Third, the appellants maintain that the dam was an obstruction of a natural watercourse, or if it did not amount to a watercourse, of a natural channel through which surface waters have been accustomed naturally to flow. In opposition to this, the respondents rely upon the plaintiffs' allegations to show the existence of an artificial system of drainage, the result of which was to deprive the channel of its characteristics as a natural one, and the plaintiffs of any right to relief. A decision upon this ground will necessarily dispose of the contentions relating to the formal statement in the first cause of action. We will discuss, therefore, only the second and third questions presented.

In the brief of the respondent counsel cite many cases from other states and from England in support of the theory that where the owner of lands divides them and conveys without express reservation what would otherwise become the servient tenement subject to a servitude appurtenant to the remaining portion, the grantee takes the land free from the servitude. In effect it is admitted that under section 1104 of the Civil Code, if the dominant tenement is first conveyed with its appurtenances, the deed carries the easement, but it is argued that under section 1084, and we may add 1105, of the Civil Code, the conveyance without express reservation passes to the grantee a title in fee simple absolute, free from all claims of the grantor. It is further argued that any other

rule would permit the grantor of such a deed to derogate from it by making unreserved claims upon the grantee.

The fallacy of this contention is demonstrated by a consideration of three instances not involving easements. When the owner of two coterminous parcels of land retains one and conveys by deed of grant the other, if respondents' theory of the conclusiveness of the grant is sound, if both parcels are riparian in character and the grantor retains the lower parcel, he could not prevent his grantee from diverting the flowing waters to which he, as riparian owner, would be entitled, nor could he require his grantee to join him in maintaining the boundary fence between the two tracts; neither could he as against his grantee insist upon his right of lateral support for the land he retained. By granting one of the two coterminous parcels the grantor does not divest himself of any right which is appurtenant to the other, even though such appurtenance may constitute an easement, if it was in use and clearly apparent to the grantee of the servient tenement at the time of the grant.

If the matter were entirely open, we would determine this question adversely to the respondents. Despite the ingenuity of the argument presented on behalf of the respondents in this regard, however, the question is not an open one. The rule that "where the owner of two tenements sells one of them, or the owner of the entire estate sells a portion of it, the purchaser takes the tenement or portion sold with all the benefits and with all the burdens that appear at the time of the sale to belong to it as between it and the property which the grantor retains," has become a rule of real property in this state as forceful as the rule in regard to the rights of lower riparian owners or the mutual obligations of coterminous owners. (*Jersey Farm Co.* v. *Atlanta Realty Co.*, 164 Cal. 412, [129 Pac. 593] ; *Cheda* v. *Bodkin*, 173 Cal. 7, [158 Pac. 1025].) If at the time of the division of the entire tract there existed the right to discharge water in the way it was discharged from the upper lands to the lower lands of the defendants, the defendants' conveyance carried with it the implication of a reservation of the servitude.

Upon the third point, since the demurrer was general and not for ambiguity or uncertainty, and since the plaintiffs allege that the watercourse dammed by the defendants was a natural watercourse, we might rest our decision upon the im-

plied admission of the defendants. As the case must be sent back for further proceedings, we do not base our decision upon the narrow ground, but deem it our duty for the guidance of the lower court, as well as of counsel, to declare the law applicable to the case directly presented by this appeal.

The distinction between a natural watercourse, that is, one in which waters other than surface waters flow, and a natural channel, as a swale, into which surface waters drain and by which they are carried away, is of no importance in this case. If the division line between the upper and lower lands on a slope follows the contour of the hill and there are no lateral depressions, the water from the upper land must naturally flow across the division line for its entire length. If on the other hand, the division line does not follow the contour, or if there are, as is usually the case, lateral depressions along the slope, the surface waters seeking the lowest level, flow first toward and then through such depressions. In the present case if there had been no change made by the sole proprietor of the lands, all the surface waters of the particular basin would have flowed through the channel from the lands of the plaintiffs to those of the defendants. The sole owner did change the flow of the surface waters. By his first ditch he relieved the channel of all surface waters in the basin above the opening of the ditch and these waters were carried to the south and around the lands of both the plaintiffs and the defendants. The defendants, therefore, were not hurt by having the amount of water discharged through the channel upon their lands reduced. After this reduction in the amount of water carried through the natural channel, the sole owner covered that channel for a portion of its length, or utilized the channel by building in it for a portion of its length the covered drain, the lower end of which was in the bed of the channel above the defendants' lands. If instead of building a covered drain he had narrowed the natural channel by building levees and had permitted the water to spread out in the natural channel below the levees on the plaintiffs' lands, so that the discharge upon the defendants' lands would have been the same, the character of the natural channel below the levees where it entered upon the defendants' lands would not have been changed. There is no difference in principle where the waters flowing in the channel were confined within the covered drain, if they were

permitted again to spread out for the whole width of the original natural channel before it reached the upper boundary of the defendants' lands.

While an upper owner may not by artificial means collect the surface waters into a single channel where they have not flowed before and precipitate them in a volume upon the servient tenement (*Rudel* v. *Los Angeles County*, 118 Cal. 281, [50 Pac. 400]), upon this appeal involving the pleadings only, it appears that the drainage system in its entirety caused the discharge only of a part of the same surface waters as flowed originally through the natural channel dammed by the defendants. In other words, regardless of changes made twenty-five years ago on and above the plaintiffs' lands, from the complaint it appears the surface waters flowing through the natural channel on to defendants' lands were thus accustomed naturally to flow there. If such was the fact, the defendants had no right to interrupt such a natural flow to the plaintiffs' injury.

If there were doubt in regard to the flow being a natural flow of surface waters, under the rule that where the sole proprietor conveys lands burdened with a servitude, the reservation is made by implication, it must be held that the respondents accepted their conveyance subject to the easement. In this case it appears that for some fifteen years prior to the acquisition by the defendants of their lands, the waters were discharged upon those lands openly and obviously as they were for more than ten years after the conveyance was made to the defendants, that the drainage system was one made for the benefit of the entire tract, and its use was necessary for the beneficial enjoyment of the upper proprietors. The case is directly within the principle announced in *Jersey Farm Co.* v. *Atlanta Realty Co.*, 164 Cal. 412, [129 Pac. 593].

The judgment is reversed and the cause remanded, with directions to the lower court to overrule the demurrer to the complaint, and to take such further proceedings as may be proper to determine the substantial rights of the parties.

Langdon, P. J., and Haven, J., concurred.