[Civ. No. 2570. Fourth Dist. Feb. 4, 1942.]

ANGUS F. GREENE, Respondent, v. LOUISE FICKERT et al., as Administratrices With the Will Annexed, etc., Appellants.

A. B. Bianchi for Appellants.

Frederick W. Welsh for Respondent:

GRIFFIN, J.—Plaintiff and respondent instituted this action against defendants and appellants Louise Fickert and Nellie Fickert, individually and as administratrices with the will annexed of the estate of Frederick A. Fickert, deceased, to quiet title to an easement to use a certain spring located on appellants' land. The trial court decreed that appellants' predecessor in title, by conveyance of a portion of his estate to respondent, transferred an easement to use a spring on grantor's reserved portion in favor of the granted estate. The complaint is in the ordinary form of a complaint in a quiet title action.

From 1910 to 1935, one George H. Palmer and wife owned all of section 18, township 82, S. R. 32 E., M. D. B. & M. in Kern County.

On June 26, 1935, the Palmers deeded to Frederick A. Fickert the N. W. ¼ and the E. ½ of section 18. This deed was based upon some oral agreement of sale between them, made a few months prior to that date. October 30, 1935, Fickert conveyed to respondent Angus F. Greene 185 acres of the south portion of the east half of section 18, which would be approximately the southeast quarter of section 18, which we will designate parcel A, "subject to reservations and rights of way of record . . . together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining, . . ." Parcel A is now and has been since 1890, improved by a house, barn, corrals and outbuildings. These improvements are located on the north part of parcel A and immediately adjacent to the north ¼ of the east ½ of section 18, which we will designate as parcel B.

From 1890 until January, 1936, the house and barn on the premises so conveyed by Fickert to Greene (parcel A) received its water supply for household and domestic uses and for watering stock and poultry from one of several springs known as the "house spring," all of which were located north of the house and barn on parcel B. The water was transferred from the "house spring" to the house and barn by

means of pipes. There were no springs on parcel A, and no other source of water for household, stock or other use was ever developed on parcel A. The use of the water from the "house spring," at the house and barn, was practically continuous from 1890 to January 1, 1936, except for interruptions due to necessary repairs and infrequent interruptions when no one was living in the house. About March 1, 1935, respondent Greene and his wife entered upon the property described as parcel A, took possession of the house and barn thereon, and lived thereon up to the date of the trial of this action. This entry and occupation was made by virtue of an oral lease between the Greenes and George H. Palmer, owner of the property at that time. Rental therefor was paid to Palmer. Thereafter, when Fickert purchased the property from Palmer, they attorned to Fickert and paid the rent directly to him.

From March 1, 1935, until about January 1, 1936, respondent had the free and uninterrupted use of the "house spring." Subsequent to July 1, 1936, Fickert forcibly tore up the pipe line running from that spring to the house and prevented respondent from enjoying the benefits thereof.

Appellants' answer sets up two defenses: (1) that the right given by Fickert to the Greenes was a mere license to use the water; (2) that in any event Fickert, after arrangements had been made to acquire the Palmer tract, had rearranged the burdens and services as to the various portions of his common estate so as to allow for the joint user of the water of the "house spring" during the summer ranging season.

The trial court specifically found (1) that at the time of the Fickert-Greene sale, Fickert was the owner of the entire estate, (i. e., of both the servient and dominant tenements); that at the time of conveyance, "the benefit of the exclusive use of said house spring . . . together with the right to pipe the water therefrom and the right to enter upon the land upon which the spring is located, was obvious and apparent, and that said benefit appeared . . . to belong to the property conveyed to said Greenes as between it and the property which the vendor Fickert retained"; (2) that Greene had the exclusive free and uninterrupted use of the "house spring" from March 1, 1935, to January 1, 1936; (3) that during said period, the "house spring" "was obviously permanently used . . ." for the benefit of the Greene parcel. It found generally in accordance with the facts above stated and de-

creed that respondent was the owner of a right and easement to the use of the "house spring" and of the water from that spring for household and domestic use, and for watering stock and poultry, together with the right and easement to pipe the water from that spring through pipes from the location of the spring and restrain appellants from interfering with the use thereof by respondent.

It is now argued by appellants (1) that there is no evidentiary support for special findings 1 to 3 inclusive; (2) that the court's conclusion that respondent was entitled to *all the water* from the "house spring" was erroneous and not supported by the evidence.

In an endeavor to prove that respondent was not entitled to the exclusive, free and uninterrupted use of the "house spring," appellants introduced testimony that in *September, 1934,* grantor Fickert installed a watering trough near the "house spring," connected it up with the spring, used it for watering cattle, and did not permit the house on the Greene portion to use this water or any portion of it except during the nighttime when it was not needed for cattle, and that this situation and arrangement continued during the cattle ranging seasons of 1934 and 1935. The evidence on this question is conflicting. We will refer to sufficient evidence to support the finding complained of.

There is no question but that the "house spring" supplied the house and buildings on parcel A up to a time when Fickert removed a watering trough which had been used at another spring called the "tunnel spring" over to the "house spring." At some period in 1934, 1935 or 1936, Fickert made this change. The change allowed Fickert's cattle grazing on parcel B to water from the trough at the "house spring" during the summer months. By a hose connection, the supply could be changed from running to the trough and made to run through the pipes leading to parcel A. Under this change, it was necessary for the owner of parcel A to regulate the flow by walking 1500 feet from the house to the "house spring" each time it was changed. This procedure continued until the pipes were torn up as above indicated.

The question as to the time when this trough was installed at the "house spring" becomes important to show what easement or condition existed at the time of the transfer of parcel A to respondent and whether he would be entitled to the full flow of that particular spring. The evidence in this respect is not only conflicting but confusing. One witness,

Gonzales, who was a tenant on parcel A from March, 1933, to March, 1935, testified that he used the "house spring" for two years prior to the time Greene came onto the property; that there was no trough at the "house spring" when he went there. He then testified that "as long as I been there I never seen it," but said in answer to the question: "Was there one before you left?" "Yes, afterwards Mr. Fickert took another trough over there to the other spring" (tunnel spring). Margaret Greene, wife of respondent, who moved into the house on the Greene property about the first day of March, 1935, testified: "Q. When was the watering trough put in at the house spring? A. Well, they hauled the trough up there and it laid on the ground for three or four weeks, I think, it was hauled up there in August and it was connected . . . Q. (Interrupting) August what year? A. I wouldn't want to be hung for this answer, but I think it was in 1936 . . ." She also testified that the first interruption of respondent's exclusive, free and continuous use of the spring came six or seven months after she "got the deed" (the deed from Fickert to Greene was dated October 30, 1935). Respondent testified that the change in the trough came about in September, 1936; that he had a conversation with Fickert pending negotiations for the purchase of the property wherein it is claimed that Fickert said: ". . . you got a nice spring there, and went on to tell me the fine watermelons the Davenports raised there and the nice garden that was also raised down by the barn with water from this spring, and that we could have all the garden we ever needed there from water from the spring." Much more evidence to the same effect was produced. Without further repetition of it, it will suffice to say that there was sufficient to support the finding that the change in the "house spring" was not made until sometime after the transfer of the property to respondent and that the use thereof up to the time of the change was exclusive, that such use was obvious and apparent, that the benefit appeared to belong to the property, and that Fickert intended to transfer the right to the exclusive use of that particular spring with the property to respondent.

The question of the conflict in the evidence was for the trial court to determine. ▮ There was certain evidence admitted, over objection, showing that the particular "house spring" was used exclusively by respondent's predecessors in interest back as far as 30 years. Even if the reception of this

testimony was error, as claimed by appellants, it cannot be said that appellants were prejudiced thereby when they brought out the same evidence by their own witness and where there was other ample evidence to support the conclusion reached.

It therefore follows, under the findings, section 1104 of the Civil Code which provides that "A transfer of real property . . . creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed," section 1084 of the Civil Code, and the decisions thereunder, that appellants' contentions are without merit. (*Cave* v. *Crafts*, 53 Cal. 135; *Kallenburg* v. *Long*, 39 Cal. App. 731 [179 Pac. 730] ; *Swarzwald* v. *Cooley*, 39 Cal. App. (2d) 306 [103 Pac. (2d) 580] ; *Jersey Farm Co.* v. *Atlanta Realty Co.*, 164 Cal. 412 [129 Pac. 593] ; *Vargas* v. *Maderos*, 191 Cal. 1 [214 Pac. 849].)

Appellants question the sufficiency of the allegations of the complaint. The complaint states a cause of action. No demurrer to the complaint was interposed in the trial court. This question cannot be raised for the first time on appeal. (*Egilbert* v. *Hall*, 44 Cal. App. (2d) 305, 311 [112 Pac. (2d) 291].) The evidence supports the findings and the findings support the judgment.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.