[S. F. No. 11220. In Bank.—April 27, 1926.]

ANTONIO F. SILVEIRA, Respondent, v. SAM SMITH et al., Appellants.

[1] EASEMENTS — LANDING PLACE AND ROADWAY — CONVEYANCE OF SEPARATE PARCELS OF DOMINANT TENEMENT—REUNITING OF TITLE CONTINUANCE OF EASEMENT.—Where the owner of a large tract of land established on the banks of a navigable slough, a landing place for produce, etc., created a roadway therefrom through the tract for the benefit of certain parcels thereof, and thereafter the owner of the tract conveyed and bequeathed the parcels of land to different persons, the fact that the title to all of the parcels afterward reunited in one owner did not extinguish the right of user of the landing place and roadway theretofore existing in favor of each of the parcels, where the owners of each of the parcels continued to use the landing place and roadway after the reuniting of title in one person as had been done for many years prior thereto.

[2] ID.—CONVEYANCE SUBJECT TO EASEMENT IN FAVOR OF ONE PARCEL—EFFECT ON OTHER PARCELS.—In such a case, the fact that the owner of all the parcels conveyed one of them subject to a prior express easement which was limited for the benefit of one of the parcels only does not outweigh the intentions of the grantor to reserve for the use and benefit of the other parcels retained by him the right theretofore existing to the use of the roadway and landing place.

[3] ID.—SEPARATION OF DOMINANT AND SERVIENT TENEMENT BY HIGHWAY.—The fact that the roadway in question did not lead entirely to the several tracts of land, but ended in a public highway separating the dominant and servient tenements did not militate against the existence of the easement, where the public highway existed and was used at the time that the whole tract was in a single ownership.

[4] ID. — FENCING SERVIENT TENEMENT. — Where the owner of the servient tenement shortly after acquiring it fenced the exterior boundaries and maintained a gate where the roadway entered the highway, this did not constitute an interference with the exercise of the easement, where such gate was never locked and the owners of the dominant tenement continued as before in the use of the roadway and landing place.

(1) 19 C. J., p. 914, n. 22, p. 921, n. 79, p. 947, n. 83, 86. (2) 19 C. J., p. 947, n. 83. (3) 19 C. J., p. 921, n. 79. (4) 19 C. J., p. 956, n. 12.

1. Continuance of easement after merger of estates, note, 26 L. R. A. (N. S.) 336. See, also, 9 Cal. Jur. 959; 9 R. C. L. 809.

APPEAL from a judgment of the Superior Court of Marin County. Edward I. Butler, Judge. Affirmed.

The facts are stated in the opinion of the court.

Roy C. Lewis and Thos. P. Boyd for Appellants.

George H. Harlan for Respondent.

RICHARDS, J.—This appeal is one prosecuted by the defendants for the purpose of assailing and overthrowing a judgment entered herein in favor of plaintiff, whereby the latter was decreed to be entitled to an easement over a certain roadway leading from what is known as "Lucas Embarcadero" and up Gallinas Creek, in Marin County, to the public highway between San Rafael and Petaluma, together with a right to use said Embarcadero with sufficient convenient space around the landing place thereon for the shipment or transshipment of supplies, goods, produce, etc., to and from certain parcels of land held in tenancy by the plaintiff. These parcels of land are denominated in the record as Parcels "A," "B," and "C," and are subdivisions of a larger tract of land, originally known as the Rancho San Pedro Marguerita y Las Gallinas, comprising an area of five leagues, being a rancho granted to one Timothy Murphy in the year 1844. The parcel of land owned by the defendants and upon which the rights and easements claimed by the plaintiff are sought to be imposed is designated in the record as Parcel "I" (one) and was also a subdivision of said original rancho. The said original rancho lay to the northward of the city of San Rafael. Extending from San Pablo Bay to the easterly boundary line of the rancho was a body of water, known as Gallinas Creek or Slough, upon which small vessels were accustomed to ply, and upon the bank of which there came very early to be established a landing known as Lucas Embarcadero, which was the landing place for supplies coming in and for products going out, for the convenient use of the entire rancho and its occupants, and which was connected with the public highway leading through said rancho to Petaluma by a private roadway extending on up Gallinas Creek, and which was also used for the convenience of the entire rancho and its occupants in connection with said Embarca-

dero. The rancho was early subdivided into the parcels or tracts of land above referred to, and Parcel "I" thereof was the parcel bordering upon the slough and upon which the said Embarcadero was located, and from which the aforesaid private roadway extended across said Parcel "I" (one) to the public highway. In the year 1851 Timothy Murphy conveyed Parcel "A" to James Miller, the predecessor in interest of the plaintiff herein. In January, 1853, Timothy Murphy by his last will and testament bequeathed Parcels "B," "C," and "I" to John Lucas, and these parcels were thereafter held by said Lucas as one ranch under the name of Lucas Rancho until December, 1863, at which time John Lucas, through his trustee, James Dickson, conveyed Parcel "I" and Parcel "C" to John Thomas Code. Said conveyance contained a reservation to the party or parties of the first part of a perpetual right of way to the Embarcadero, known as Lucas Landing, for the benefit of Parcel "B," over the private road leading from said Embarcadero to the highway, the said right of way being used and to be used "only for hauling wood, timber, lumber and farm produce from other portions of said Lucas ranch to said Embarcadero, together with the right to pile and store convenient for shipping 100 cords of wood and 1,000,000 feet of lumber and timber at said Embarcadero." In March, 1870, one Martin Miller acquired the title from Code to said Parcel "I," subject to the reservation of the easement contained in said former deed; and in October, 1870, Martin Miller conveyed to James Miller, who was then the owner of Parcels "A," "B," and "C," said Parcel "I," subject to the same easement. By virtue of said latter conveyance James Miller thus became the owner and holder of the title to Parcels "A," "B," "C," and "I" of said original rancho. In March, 1876, said James Miller conveyed Parcel "I" to a corporation known as the Patent Brick Company, and in said conveyance embodied the following reservation: "This grant is made subject to a certain right of way reserved in said deed from James Dickson et al. to J. T. Code, dated December 2, 1863, recorded," etc. Thereafter said Parcel "I" by mesne conveyances became the property of the defendants and appellants herein.

The foregoing recitals as to the original ownership and subsequent transfers of the title to these several parcels of land are summarized from the findings of the trial court

and are entirely undisputed. The matters which are in dispute upon this appeal are those which are embodied in certain portions of findings V, VI, VII, VIII, and IX of said findings of the trial court and which, according to the contention of the appellants herein, are unsupported by the evidence in the case. The portion of said findings of the trial court thus objected to refer to the use or uses which from time to time were made of that certain roadway extending from the Lucas Embarcadero to the public highway by the owners, tenants, and inhabitants of said rancho and of the foregoing subdivisions thereof from the time of the original acquisition of said rancho by Timothy Murphy continuously down to a date shortly prior to the institution of the present action in connection with the use and right to use the navigable waters of Gallinas Slough and the space occupied by the Embarcadero situate thereon. With respect to these uses of said roadway and Embarcadero during the period when Timothy Murphy was the owner of the entire rancho and thereafter and during the period when James Miller was the owner of Parcel ''A'' thereof, and when John Lucas was the owner of Parcels ''B,'' ''C,'' and ''I'' thereof, and when, subsequently, James Miller became the owner and holder of the title to each and all of said separate parcels of said rancho and during the times of his said ownership thereof and thereafter and during the time when the ownership of the title to Parcel ''I'' thereof was in the Patent Brick Company and its successors down to and after the inception of its ownership by the defendants and appellants herein, we are satisfied from a careful examination of the record that the findings of the trial court with respect to the foregoing use or uses of said roadway and Embarcadero are fully supported by the evidence in the case. The dispute between the parties to this appeal is not so much over the insufficiency of the evidence as showing the foregoing uses as it is over the conclusion which the trial court has deduced therefrom as to the rights from time to time of those who thus made use of the said roadway and Embarcadero. It is the contention of the appellants herein that when, in the year 1870, James Miller, who had theretofore become the owner of Parcels ''A,'' ''B,'' and ''C'' of said tract, became also the owner of Parcel ''I'' thereof, there was thereby worked an extinguishment not only of

198 Cal.—33

whatever easement had been referred to and reserved in the deed from James Dickson et al. to John Thomas Code, but also of whatever other easement or rights of user had theretofore existed in connection with each or any of said parcels of said tract and which were thus joined in his common ownership of Parcels ''A,'' ''B,'' ''C,'' and ''I'' thereof. On the other hand, it is the contention of the respondent herein that even though it be true that there was thus united in James Miller the several titles to these separate tracts and that they thus came under his single ownership, nevertheless the use or uses of said roadway and Embarcadero continued in connection with these several parcels of land in the form of a *quasi*-easement for the benefit thereof, and that when the said James Miller undertook to convey the title to these several and separate tracts of the original rancho and of his united ownership for a time thereof, he thereby revived into a full easement the former right of the owners and occupants of these separate parcels of land in and to the use of said roadway and Embarcadero to the full extent of the continuous use and enjoyment thereof during the entire period wherein these several changes in the title and ownership of the several tracts were taking place.

Each of the parties to this appeal makes respectively their foregoing contentions and each urges in support thereof a decision of this court which it is contended is on all-fours with the instant case. The appellants herein rely upon the case of *Taylor* v. *Avila,* 175 Cal. 203 [165 Pac. 533], as fully sustaining their contention and, hence, requiring a reversal of this case. In the case of *Taylor* v. *Avila* the plaintiff brought suit to establish and quiet title to her alleged right to maintain and use a certain water ditch extending from a main canal through the lands of the defendant to and over the plaintiff's land. It appeared that in the year 1903, at or about the time of the construction of said water ditch, the plaintiff was the owner of an eighty-acre tract of land adjoining land owned by the defendant or his predecessors and the ditch in question was so constructed as to run along the eastern edge of defendant's land to and into the plaintiff's eighty-acre tract for use in irrigation thereof. In that year plaintiff conveyed to another the twenty-five acres of her tract adjoining the de-

fendant's land without reservation, but, notwithstanding
said conveyance, continued to use the ditch as before for
the irrigation of her remaining land and by so doing ac-
quired, as the court found, a prescriptive right as against
her said grantee to maintain and use said ditch as before.
In 1913 the plaintiff and her said grantee united in convey-
ing the said twenty-five acre tract to the defendant and in
their deed of conveyance not only described and conveyed
said land, but also embraced therein an express grant of
"all water rights, ditch right or interest in ditches, canals,
water or water rights made use of for the purpose of irri-
gating or draining said land or any of said land above de-
scribed." Notwithstanding such express grant the plaintiff
in that case continued her former use of said ditch for the
purpose of irrigating her remaining fifty-five acres of land
and such use being interfered with by the defendant, brought
suit to quiet title to her alleged right to continue to main-
tain and use said ditch. This court upon appeal denied
her that right upon the ground that its exercise would be
a use in direct opposition to the express terms of her grant.
The distinction between the case of *Taylor* v. *Avila, supra,*
and the instant case is thus made clear. In the case as
presented to us upon the present appeal the plaintiff is
not seeking to have established and maintained an easement
in and to the use of the roadway and Embarcadero, which
are the direct subject of this litigation, in opposition to his
express grant of such easement to another. What the plain-
tiff herein was seeking to have the trial court do and is
now seeking to have this court approve upon appeal is to
establish the continued existence of an easement in and to
the use of said roadway and Embarcadero existing and
inuring to the benefit of the several parcels of land above
referred to as an easement and as a corresponding servitude
upon Parcel "I" of said entire tract, notwithstanding the
several changes in ownership of said respective parcels of
land, and notwithstanding the fact that for a time the own-
ership of all of said parcels of land had been reunited in
a single person. This contention on the part of the plain-
tiff herein may be more specifically illustrated by reference
to the foregoing undisputed facts in this case. Originally
and prior to 1851 Timothy Murphy was the owner of the
entire Rancho San Pedro, and while such owner established

upon the bank of Gallinas Slough the Embarcadero in question and also created the roadway in question leading to the various parcels of said rancho above designated as Parcels "A," "B," "C," and "I" thereof for the use and benefit of the occupants of each of said parcels of land. In 1851 Timothy Murphy conveyed Parcel "A" to James Miller. In 1853 Timothy Murphy bequeathed Parcels "B" and "C" and "I" to John Lucas. In 1863 John Lucas, through his trustee, James Dickson, conveyed Parcels "I" and "C" to John Thomas Code. During this period, and down to the year 1870, the use of said roadway and Embarcadero, as the evidence abundantly shows, continued on the part of the several owners of each of said parcels of land and was unquestionably an easement inuring to the benefit of Parcels "A," "B," and "C" thereof and a corresponding servitude upon Parcel "I" thereof. In 1870 the title to these four parcels of land came to be within the ownership of James Miller, but notwithstanding such reuniting of title thereto the uses of said roadway and Embarcadero for the benefit of each of said respective parcels continued as before. In 1876 James Miller conveyed Parcel "I" to the Patent Brick Company and in said deed embraced only a reservation of the right of way over said roadway which had theretofore been reserved in the deed from Dickson et al. to Code, and which beneficially affected only Parcel "C." Aside from said reservation he did not attempt in said deed to reserve to himself any easement in favor of tracts "A" and "B," but notwithstanding this fact he and his successors in the ownership of Parcels "A" and "B," as well as Parcel "C," continued the use and exercise of an easement over said roadway and Embarcadero in the same manner and to the same extent as the same had been used and exercised during all of the previous years, and such use and exercise, as the record shows, continued down to a time shortly before the institution of the present action. To such a situation the plaintiff and respondent herein contends that the case of *Cheda* v. *Bodkin,* 173 Cal. 7 [158 Pac. 1025], has a direct and controlling application. The litigation in that case arose out of a controversy over the right to use a portion of the water flowing from certain springs on a tract of land known as the Molinari ranch to and over an adjoining property known as the Foster ranch. One Marie L.

Velasco in her lifetime owned both ranches and while such owner built dams to impound and laid pipes to convey the water from said springs upon the upper or Molinari ranch to various lower portions thereof and from thence permitted said water to continue its flow to and over that portion of her property which was later to be known as the Frank Foster ranch. By her will Mrs. Velasco devised to her granddaughter, Frances O. Pacheco, said Foster ranch, and devised and distributed among her four sons the Molinari ranch. Thereafter the use of said water continued as before in the various parties who had become the owners of said respective tracts of land down to the year 1903, when the title to both the Molinari and Frank Foster ranches came to be in Frances O. Pacheco and so continued for about two years, when the latter sold the Molinari ranch to Julia C. Bodkin, who has since been the owner thereof, and a year later sold the Frank Foster ranch to the predecessor of Silvio H. Cheda, the plaintiff in said action. The use of said water upon these ranches had continued notwithstanding these changes in title up to the time of these last-named transactions and thereafter continued as before down to the year 1909, when Julia C. Bodkin, as the owner of the Molinari ranch, undertook to cut off the flow of water therefrom to the Frank Foster ranch, and it was this interference with the use of said waters which gave rise to the litigation in the case of *Cheda* v. *Bodkin, supra.* This court in dealing with the foregoing facts applied the doctrine of a *quasi* easement thereto as the same had been theretofore developed and applied in the case of *Cave* v. *Crafts,* 53 Cal. 135, and *Quinlan* v. *Noble,* 75 Cal. 250 [17 Pac. 69], and in so doing stated the principle underlying said doctrine to be this: That "where the owner of two tenements sells one of them, or the owner of the entire estate sells a portion of it, the purchaser takes the tenement or portions sold with all the benefits that appear at the time of the sale to belong to it as between it and the property which the vendor retains." In the application of said principle to the case then in hand this court further stated that, "where the owner of one heritage consisting of several parts has so adapted them that one derives a benefit from the other, when he sells one of them without making mention of the incidental burdens of one in respect to the other, an implied understanding arises that the burdens and correlative

advantages shall continue as before the separation of the title"; citing in support thereof *Powers v. Heffernan,* 138 Ill. App. 12; *Denton v. Leddell,* 23 N. J. Eq. 64, and the notes of *Rollo v. Nelson,* 34 Utah, 116 [26 L. R. A. (N. S.) 315, 96 Pac. 263]. The following additional cases from our own tribunals uphold the same doctrine: *Jersey Farm Co. v. Atlanta Realty Co.,* 164 Cal. 413 [129 Pac. 593]; *Kallenburg v. Long,* 39 Cal. App. 731 [179 Pac. 730]; *Nay v. Bernard,* 40 Cal. App. 364 [180 Pac. 827]; *Palvutzian v. Terkanian,* 47 Cal. App. 47 [190 Pac. 503]. [1] The foregoing doctrine as enunciated in *Cheda v. Bodkin, supra,* would seem to have direct application to the facts of the instant case as found by the trial court and which facts, in so far as they were matters in dispute during the trial of this cause, we think, were fully established by the evidence in the case. [2] It is true, as insisted by the appellants, that James Miller in his conveyance of Parcel "I" to the Patent Brick Company expressly reserved but one easement therein, that one being a limited easement for the benefit of Parcel "B" of said tract referred to in the deed of Dickson et al. to Code. This fact, however, ought not, in our opinion, to outweigh the intention of the grantor in said conveyance to reserve for the use and benefit of the several other parcels of said tract retained in ownership by him the right theretofore existing and thereafter continuously asserted to the use of said roadway and Embarcadero as an easement or *quasi* easement appurtenant to all of said parcels of land and a continuing burden and servitude, both before and after said conveyance, upon Parcel "I" thereof.

[3] It is the further contention of the appellants herein that the undisputed fact that the roadway in question did not lead entirely to the said several tracts of land to which said Miller after his conveyance to the Patent Brick Company retained the title, but only ran up to and ended in the public highway which separated Parcel "I," the servient tenement, from the other parcels in said tract, militates against the existence of any such easement as the plaintiff has insisted upon in this action. We do not perceive any particular merit in this contention. The public highway referred to was in existence and use during that early period when Timothy Murphy was the owner of the entire rancho and when he conveyed or devised the respective parcels thereof to those who became the separate owners thereof

prior to the reuniting of the title to the several tracts of land in James Miller in 1870, the easements then created and thus existing in said several parcels of land inured to the benefit of said several tracts, notwithstanding the existence of said highway, and continued so to do after the uniting of title in Miller, and so existing and so continuing as easements or *quasi* easements appurtenant to said several tracts of land, must be held to have been from their inception unaffected by the circumstance that a public highway separated said dominant tenement from the servient tenement after the same had passed under the separate ownership of said corporation and its successors.

[4] The final contention of the appellants herein seems to be that since the Patent Brick Company and its successors in the ownership of Parcel ''I'' not long after the acquisition thereof fenced the exterior boundaries of said parcel of land and established and maintained a gate at the point where said roadway entered the highway, its action in these regards constituted such an interference with the exercise of the easement which the plaintiff herein seeks to have established as to operate to destroy the same. This contention would have a considerable, if not a controlling, persuasiveness were it not for the fact that after the inclosure of said servient tenement by the owners thereof and the establishment and maintenance of the gate above referred to such gate was never locked and the owners of said dominant tenement continued as before in the use of said roadway and Embarcadero in the same manner and to the same extent as their predecessors had anciently used and enjoyed the same, and that such unobstructed use and enjoyment continued down to a period shortly before the institution of the present action.

In view of the foregoing facts and of the law applicable thereto as applied by the trial court under the authority of *Cheda* v. *Bodkin, supra,* we are satisfied that no error was committed by the trial court in awarding its judgment in the plaintiff's favor. Such judgment is, therefore, affirmed.

Shenk, J., Waste, C. J., Curtis, J., Seawell, J., and Cashin, J., *pro tem.,* concurred.