[L. A. No. 16547.   In Bank.—January 16, 1941.]

BESSE C. ELLIOTT, Respondent, v. VIRGIL McCOMBS et al., Appellants.

Wm. H. B. Haymond, Herbert L. Iasigi, Judd Downing and Elmer Patrick Friel for Appellants.

John J. Craig for Respondent.

EDMONDS, J.—It was successfully asserted in the trial court that a right of way for road purposes was granted under deeds made by a common predecessor in interest of the parties to this action. By the terms of the decree appealed from the respondent's title and right to the use of a strip of land is quieted against the appellants and the latter are enjoined from interfering with such use.

The controversy concerns land within the area bounded by the four streets shown on the diagram, all of which was

acquired by San Fernando Mission Land Company many years ago under a deed which described it as lots 9, 10, 15

and 16 according to a map of record. Deeds of the land company have conveyed portions of these lots, designated on the diagram by letters, by metes and bounds. This action was commenced by the respondent, as the owner of parcel B, to quiet title to an easement and right of way over the north 30 feet of parcels F and G and the south 30 feet of parcel A.

Pursuant to the requirements of a contract of sale made in 1919, the terms of which are not disclosed, by a deed dated June 20, 1922, the land company conveyed parcel A "except the south 30 feet thereof reserved for road purposes" and parcel F "except the north 30 feet thereof reserved for road purposes" to one Rice, appellant Virgil McCombs' immediate grantor. Some years later Rice commenced an action against the land company and, in 1930, secured a decree by default quieting his title to this land, including that part of each parcel which had been reserved for road purposes. At the time that action was filed, the land company had conveyed all of its interest in the property shown on the diagram except that reserved for road purposes. On May 22, 1930, the date of the decree quieting Rice's title, there was recorded a deed made by him conveying parcels A and F to appellant Virgil McCombs with no reservation of a right of way.

In 1922, the land company conveyed parcels B and H to Title Guarantee and Trust Company without reservation or any mention of the rights of way reserved in its deed to parcels A and F. Later, Title Guarantee and Trust Company conveyed parcel B, reserving the south 30 feet for road purposes. The respondent acquired title to this parcel by mesne conveyances containing the same reservation. Parcel H was also conveyed by the land company's grantee with a reservation of the right to use the north 30 feet for road purposes.

The land of appellant Eva McCombs is parcel G which was conveyed by the land company in 1923 with a reservation of the north 30 feet for road purposes. She acquired title by a deed containing the same reservation.

All of the other parcels shown on the diagram were conveyed by the land company in earlier years. Parcel I was deeded in 1920 subject to a reservation of the north 30 feet for road purposes. However, in 1926 the land company executed a deed to the then owner quitclaiming any interest in this land. The deed to parcel D was made in 1921 with-

out reservation. In the same year it conveyed parcels C and E by deeds reserving for road purposes the south 30 feet of the land described.

Two days before the present action was commenced, the land company and Title Guarantee and Trust Company executed various deeds quitclaiming the south 30 feet of parcels A, B, C, D, and E, and the north 30 feet of parcels F, G, H, and I to the owners of parcels abutting therein. These two corporations also separately executed deeds, bearing the same date, quitclaiming to the owners of abutting parcels all right, title and interest in and to an easement for road purposes in and over the south 30 feet of parcels A, B, C, D, and E and the north 30 feet of parcels F, G, H and I.

The trial court found that it was the intention of the land company "to create a right of way for road purposes sixty feet in width . . . connecting the roadways . . . known as Hayvenhurst Avenue and Balboa Avenue . . . ; that for several years prior to the commencement of this action said sixty-foot strip between lots 10 and 15 has been used for road purposes by the owners of property abutting thereon . . . and others who chose to use the same, and that said strip is now a well-defined roadway; that at the time the defendants acquired title to their properties said strip was being so used. . . . " That as to parcels A and F owned by Virgil McCombs "there was no user of that portion of the sixty-foot strip and right of way for road purposes . . . "; that all of the grantees mentioned in the deeds of the 60 foot strip across the entire quarter section, dated October 24, 1936, from the land company to the title company, are the owners of "some parcel of property abutting upon said easement for road purposes, and that collectively they own all of such abutting property"; "at the time defendants acquired their respective properties, . . . they had such constructive notice as was given by the public records that a reservation for road purposes, sixty feet in width lying between lots 9 and 10 on the north, and lots 15 and 16 on the south, was reserved for road purposes . . . ; that at the time San Fernando Mission Land Company, a corporation, had divested itself of all interest in . . . [the land shown on the diagram] except its interest in said sixty-foot reservation for road purposes. . . . "

The appellants contend that the reservation in some, but not all, of the deeds made by the land company did not operate to reserve, for the mutual benefit of all adjoining parcels, the use of the strip of land which is in controversy. Furthermore, declare appellants, the trial court erred in its conclusion of law that the judgment secured by Rice against the land company did not terminate the easement claimed by the respondent, and at the time of the conveyance to them they had no actual or constructive notice of an easement over their land for the benefit of adjoining land.

Respondent, in support of the judgment, urges that the language used in the deed from the land company to Rice states exceptions and not reservations; therefore, the 60 foot strip of land was not conveyed. Title to this strip, she insists, remained in the land company, subject to the vested and irrevocable right in Rice and his successors in interest to use it for road purposes.

In a grant of real property it is presumed that the grantor intended to convey a fee-simple title unless it appears from the grant that a lesser estate was intended. (Civ. Code, sec. 1105.) And as the court said in *Parks* v. *Gates*, 186 Cal. 151, 155 [199 Pac. 40], "there is a vast difference between a grant for purposes of 'right of way' for a road and a grant of land 'to be used for a road'. The latter grant may be entirely consistent with the conveyance of a fee-simple title, as a road may be maintained as readily on land held in fee as under an easement, but the grant of land as a right of way recognizes nothing but an easement." This rule was applied in *Cooper* v. *Selig*, 48 Cal. App. 228 [191 Pac. 983], where the court construed a deed conveying land to the city of Los Angeles for the purposes of a public road as passing the fee-simple title. Under the same principle of construction, the language in the deed of the land company to Rice conveyed a fee-simple title to him with the reservation of an easement on the part of the grantor. (See *Winston* v. *Johnson*, 42 Minn. 398 [45 N. W. 958]; *Coon* v. *Sonoma etc. Co.*, 182 Cal. 597 [189 Pac. 271]; *Las Posas Water Co.* v. *Ventura County*, 97 Cal. App. 296 [275 Pac. 817].)

The next question is whether this easement is in gross or appurtenant to the land. A reservation, of course, must be to the grantor, or to the grantor's property, and cannot be made to a stranger to the deed. (*Butler* v. *Gos-*

*ling,* 130 Cal. 422 [62 Pac. 596]; *Beardslee* v. *New Berlin Light etc. Co.,* 207 N. Y. 34 [100 N. E. 434, Ann. Cas. 1914B, 1287; *Simmons* v. *Northern Pac. R. Co.,* 88 Wash. 384 [153 Pac. 321, 155 Pac. 1039, Ann. Cas. 1918C, 1184].) Here, again, the answer requires an interpretation of the deed. The appellants contend that no mutuality of benefit for adjoining parcels can be inferred from the language of the reservations, and that as the deeds do not declare that the reservations are for the benefit of the adjoining parcels, they were intended to be personal to the grantor. Further, declare the appellants, assuming that the land company intended the reservations for the benefit of the adjoining parcels, as the grantees of parcels conveyed with reservations have no right of way over parcels deeded free of reservations, there is no mutuality of benefit in the adjoining landowners, and therefore the easement may not be enforced.

This argument is based upon two misconceptions. The first is the appellants' assumption that the benefit of the reservations was intended to be personal to the grantor because there is nothing to indicate a contrary intention. However, when the language of a deed is ambiguous, and it does not clearly appear whether the easement was intended to be in gross or appurtenant to land, it is never construed as personal when it may fairly be construed as appurtenant to some other estate. (*Hopper* v. *Barnes,* 113 Cal. 636 [45 Pac. 874]; *Eastman* v. *Piper,* 68 Cal. App. 554 [229 Pac. 1002]; *Nay* v. *Bernard,* 40 Cal. App. 364 [180 Pac. 827]; 19 C. J. 868.) The cases which apply this rule also hold that in ascertaining the intention of the grantor, as in any other contract, in the absence of an express declaration, the nature of the easement may be determined by evidence *aliunde* the deed. An easement, therefore, may be appurtenant although the deed does not expressly declare it to be so, and the law favors such an interpretation.

The evidence shows that the land company, in selling portions of lots 9, 10, 15, and 16, reserved a 30 foot strip for road purposes in six of the nine conveyances of land along an east-west median line. From this and other evidence the trial court was justified in finding that it intended to provide a 60 foot road from Balboa Avenue to Hayvenhurst Avenue. And a road is primarily laid out for the benefit of the adjoining land owners. It must be remembered that the purpose of the land company was to sell the prop-

erty which it had acquired as lots 9, 10, 15, and 16, and that it would have no use for an easement in gross. On the contrary, the logical purpose of the grantor in reserving an easement would be to give grantees of land bordering upon the east-west median line of the tract offered for sale an outlet from their property at that point. Parcels A, B, D, E, and H each contain approximately 10 acres and the other parcels about 20 acres each. The owners of land having that amount of acreage could well use and might reasonably require access to their land by means other than the public streets shown on the diagram. The only logical conclusion to be drawn from these facts is that the easements were created for the benefit of the adjacent property.

More particularly, the evidence compels the conclusion that the easement was for the benefit of the land later acquired by the respondent. This property borders on no main street, and its only means of access is along the median east-west line. The nearest street to this land is Balboa Avenue to the west, which can only be reached by passing over Parcel A or F or both. Certainly no property owned by the land company at the time it sold parcels A and F to Rice could have been more clearly intended to receive the benefits of the easement then reserved than the land owned by the respondent.

In urging that this conclusion is erroneous because there was no mutuality in the provisions of the various deeds, the appellants have misconceived the nature of the interests created. They insist that the rule stated in *Werner* v. *Graham,* 181 Cal. 174 [183 Pac. 945]), is controlling. But that case concerns equitable servitudes in land and restrictive covenants which are equitable in nature. An easement, on the other hand, creates an interest in the land. (*Eastman* v. *Piper, supra;* Gale on Easements, 9th Ed., p. 7.) It is an interest which gives a privilege to a particular person or owner of property to enjoy a right over the property of another. (Jones on Easements, pp. 1 and 2; Thompson on Real Property, Perm. Ed., vol. 1, p. 502.) As it is an interest in land it can only be created by grant, express or implied, or prescription, and not by parol. (*Eastman* v. *Piper, supra.*) It is an incorporeal interest in the servient estate. (*Kellett* v. *Ida Clayton etc. Wagon Road Co.,* 99 Cal. 210 [33 Pac. 885]; Thompson on Real Property, Perm. Ed., vol. 1, p. 506.) The principles governing equitable servitudes are therefore not

applicable, and it was not necessary for the respondent to show that each deed made by the land company contained a reservation similar to that in the deed to Rice. Her cause of action depends upon the rights which were created by that deed in favor of the land company and to which she succeeds as the subsequent owner of the adjoining land.

Construing the reservation over parcels A and F as appurtenant to the land, the respondent's right to a judgment against the appellant Virgil McCombs depends upon whether the land company owned parcel B at the time the easements were created.

It appears that in 1919 the land company made a contract of sale with Rice and in 1922 made a deed in fulfillment of that contract. The respondent's land was conveyed by the land company to Title Guarantee and Trust Company, her predecessor in interest, about three years after Rice purchased parcels A and F on contract but before the deed was made to him. However, a contract for the sale of real estate may be specifically enforced by the purchaser, equity regarding as done that which ought to be done; it considers the purchaser to be the owner of the land. (Tiffany, Real Property, 3d ed., vol. 1, p. 528; *Orange Cove Water Co.* v. *Sampson,* 78 Cal. App. 334 [248 Pac. 526], *Retsloff* v. *Smith,* 79 Cal. App. 443 [249 Pac. 886].) The vendor who retains the legal title as security for the payment of the purchase price has no greater rights than he would possess if he had conveyed the land and taken back a mortgage. (*Miller* v. *Waddingham,* 91 Cal. 377 [27 Pac. 750, 13 L. R. A. 680].) The vendee, particularly after he goes into possession of the land under an executory contract, is for all purposes the owner and the vendor retains mere legal title. (Thompson on Real Property, Perm. Ed., vol. 8, p. 522.)

The record shows that Rice took possession of the property following the execution of the contract of sale; he thereby became the equitable owner with all the benefits incident to such ownership, and the land was subject to any easements reserved for the benefit of the grantor or the grantor's property. It necessarily follows that the benefits of that easement attached to the property and may now be enforced by the respondent.

The judgment secured by Rice quieting his title against the land company does not bind the respondent who was not a party to that action. Also the subsequent quitclaim

deed executed by the land company to Virgil McCombs did not terminate the respondent's easement to a right of way appurtenant to her land. But the respondent's rights as against him must be limited to a decree quieting her title to the use for road purposes of the south 30 feet of parcel A and the north 30 feet of parcel F and enjoining any interference with that use.

However, when the deed to parcel G was made, the land company had conveyed all of the other parcels shown on the diagram, and the reservation in it could not have been made for the benefit of any other property. But it must be presumed that this provision in the deed was made to carry out some purpose, and "an interpretation which gives effect is preferred to one which makes void". (Sec. 3541, Civ. Code.) It must, therefore, be construed as an easement in gross.

By a deed executed in 1936, the land company granted to the respondent and others all of its rights to the easement in and over the property of Eva McCombs. Under this deed the respondent acquired a title to the right of way and is entitled to have that title quieted and to an injunction against any interference with her use of the northerly 30 feet of parcel G for road purposes. (*Callahan* v. *Martin,* 3 Cal. (2d) 110, 121 [43 Pac. (2d) 788, 101 A. L. R. 871].)

The judgment is therefore reversed with directions to enter judgment in favor of the respondent in accordance with the conclusions which have been stated, respondent to recover her costs on appeal.

Gibson, C. J., Traynor, J., Spence, J., *pro tem.,* Carter, J., and Shenk, J., concurred.

HOUSER, J., Dissenting.—I dissent.

The appeal from the judgment which was rendered herein in the lower court was originally determined by the District Court of Appeal for the Fourth Appellate District. Thereafter, a petition for hearing in this court was granted, particularly for the purpose of giving more careful consideration to certain points of law than was practicable at the time this court considered the petition for hearing of the appeal herein. Following the submission of the cause and taking into account the points and authorities submitted in the additional briefs which were filed by the respective parties to the litigation, I

have become convinced that the opinion which was rendered by the District Court of Appeal, as hereinbefore referred to, has adequately expressed my views with reference to each of the several issues which were presented on the appeal. Accordingly, the said opinion, which was prepared by Mr. Justice Griffin of the said District Court of Appeal, is adopted as my opinion. It is as follows:

"By this action in equity plaintiff Besse C. Elliott, respondent herein, asks injunctive relief and seeks to quiet title to a right of way and easement for road purposes over the properties of Virgil McCombs and Eva F. McCombs, defendants and appellants. The tract of land involved in this litigation was acquired by the San Fernando Mission Land Company, hereinafter referred to as the 'Land Company', on January 18, 1905, and is described as tracts 9, 10, 15 and 16 of subdivision No. 1 of Porter Land and Water Company, as per map recorded in book 31, page 3, miscellaneous records of Los Angeles County. Said map was recorded in 1888 and showed, included with the subdivision of adjoining lands, the subdivision into quarters of the southwest quarter of section 18, township 2 north, range 15 west, S. B. B. & M., in Rancho Ex Mission de San Fernando. These quarters are designated on this map by the above tract or lot numbers as: Tract No. 9 being the northwest quarter, tract No. 10 being the northeast quarter, tract No. 15 being the southeast quarter, and tract No. 16 being the southwest quarter, which quarters will hereinafter be referred to by their respective tract numbers. This map also showed roads bounding the four sides of said quarter section. These roads came to be known as Devonshire street on the north, Hayvenhurst avenue on the east, Lassen street on the south, and Balboa avenue on the west.

"Defendant Virgil McCombs' property, over which plaintiff claims a right of way, comprises the west half of tract 16 and the southwest quarter of tract 9, the westerly boundary thereof fronting on the aforementioned road, Balboa avenue. Plaintiff's property comprises the southeast quarter of tract 9, adjoining the easterly boundary of defendant's southwest quarter of tract 9. The right of way in question is claimed over a strip of land, 60 feet in width, running east and west across defendant Virgil McCombs' land. This strip claimed as a right of way comprises the north 30 feet of the west half

of tract 16 and the south 30 feet of the southwest quarter of tract 9.

"After acquiring title in 1905 from the subdivider, the Land Company conveyed in parcels all that land in said quarter section bounded by the line of abutment between the north and south halves thereof. This line of abutment is the center line of the right of way in question. In certain deeds of parcels bounded on the south by said line the Land Company set forth reservations of the southerly 30 feet thereof for road purposes, while in other deeds of adjoining parcels no such reservations were made. Certain deeds of parcels bounded on the north by said line contained reservations of the northerly 30 feet thereof for road purposes, while deeds of adjoining parcels neglected to provide for like reservations. Plaintiff contends that, by virtue of these reservations, the Land Company intended to and did set apart for the benefit of adjoining landowners a strip of land 60 feet in width lying between the north and south halves of said quarter section and running from the east to the west boundary thereof.

"After the execution and payment of a contract of sale dated in 1919 (the terms of which are not disclosed as to any reservations therein), by deed dated June 20, 1922, the Land Company conveyed to one Rice, defendant Virgil McCombs' immediate grantor, the west half of tract 16 and the southwest quarter of tract 9. This deed conveyed 'the west half of the southwest quarter, except the north 30 feet thereof reserved for road purposes, and the southwest quarter of the northwest quarter, except the south 30 feet thereof reserved for road purposes'. The reservations embodied in this language of the description in said deed to Rice constitute the sixty-foot strip in controversy and over which plaintiff claims to be entitled to a right of way and easement. On July 14, 1927, Rice commenced an action against the Land Company in the superior court of Los Angeles county to quiet title to the west half of tract 16 and the southwest quarter of tract 9, being the land now owned by defendant Virgil McCombs, and mentioned herein as having been conveyed to Rice by the Land Company. Notice of the pendency of the action was duly given in writing and recorded in the office of the county recorder of Los Angeles county. No contest having been made by the Land Company, and its default in said

action having been duly entered, Rice was, on May 22, 1930, adjudged the owner and in possession, and the decree quieting his title to said property, including the claimed right of way, was duly entered on May 23, 1930. At the time this quiet title action was filed the Land Company had conveyed all of its interest in and to the said southwest quarter of section 18, except the interests reserved and retained by it through reservations for road purposes in some but not all of its deeds. On May 22, 1930, the date of the decree in said quiet title action, there was recorded a deed dated May 3, 1930, from Rice and wife to defendant Virgil McCombs, conveying the west half of tract 16 and the southwest quarter of tract 9, being the land plaintiff seeks to burden with an easement. This deed from Rice to defendant did not contain any reservations of, or reference to, an easement or right of way. Thus defendant acquired his interest in the above-described property, which he has held ever since.

"Prior to the conveyance from the Land Company to Rice, and by deed dated February 23, 1922, the Land Company conveyed the southeast quarter of tract 9, plaintiff's property, and the northwest quarter of tract 15 to Title Guarantee and Trust Company, a corporation, hereinafter referred to as the 'Title Company'. The evidence shows that this deed to the Title Company did not contain any reservations. No reservation was made of the south 30 feet of the southeast quarter of tract 9. Such a reservation, if made, would have provided an easterly continuation of the south thirty-foot strip of said southwest quarter of tract 9 reserved by the Land Company in the aforementioned deed to Rice. The Land Company in this deed to the Title Company did not grant, or refer to, or describe any right of way over said southwest quarter of tract 9 or the west half of tract 16. By deed dated February 1, 1926, the Title Company, which was the grantee of the grantee of the original subdivider, conveyed the southeast quarter of tract 9 and the northwest quarter of tract 15. This deed contained the following reservations, to-wit: 'reserving the south 30 feet of lot 9 and the north 30 feet of lot 15, for road purposes'. Through mesne conveyances, and on January 24, 1936, plaintiff acquired title to the southeast quarter of tract 9 by a deed containing a reservation of the south 30 feet thereof for road purposes. Thus plaintiff acquired title to the property, the ownership

of which she now claims entitles her to a right of way across defendant Virgil McCombs' land.

"By deed dated August 27, 1921, the Land Company conveyed the west half of the east half of tract 10. This deed contained no reservations. By deed dated April 16, 1920, the Land Company conveyed the east half of tract 15. This deed contained a reservation of the north 30 feet thereof for road purposes. Through mesne conveyances and on June 23, 1926, Hershel C. Baskett acquired title to said east half of tract 15 by a deed containing a like reservation. However, on June 15, 1926, the Land Company executed to Baskett a quitclaim deed covering this east half of tract 15. By deed dated February 19, 1923, the Land Company conveyed the east half of tract 16. This deed contained a reservation of the north and south 30 feet thereof for road purposes. Through mesne conveyances, and on January 30, 1928, the defendant Eva F. McCombs, wife of Virgil McCombs, acquired title to this east half of tract 16 by a deed containing like reservations. By deed dated June 22, 1921, the Land Company conveyed the west half of tract 10. This deed contained a reservation of the north and south 30 feet for road purposes. By a similar deed dated January 6, 1921, the Land Company conveyed the east half of the east half of tract 10, containing a reservation of the south 30 feet thereof for road purposes. Two days before the action herein was commenced and on October 24, 1936, the Land Company and the Title Company executed various quitclaim deeds covering the south 30 feet of lots 9 and 10 and the north 30 feet of lots 15 and 16 to owners of parcels abutting thereon. On said date the Title Company executed a quitclaim deed to one Mabel Ruth Craig, covering the north 30 feet of the northwest quarter of lot 15, and it also executed a quitclaim deed to plaintiff Besse C. Elliott, covering the south 30 feet of the southeast quarter of lot 9. Both of these quitclaim deeds contained a provision: 'Subject to an easement for road purposes over said property.' On October 24, 1936, the Title Company executed a quitclaim deed to all the owners of abutting parcels, covering all of its right, title and interest in and to an easement for road purposes in and over the south 30 feet of lots 9 and 10 and the north 30 feet of lots 15 and 16. Finally, on the same date, the Land Company executed a quitclaim deed to the same owners of abutting parcels, covering all of

its right, title and interest in and to an easement for road purposes in and over the south 30 feet of lots 9 and 10 and the north 30 feet of lots 15 and 16. In the spring of 1934, defendant Virgil McCombs planted eucalyptus trees, 10 feet apart, in a row across the west boundary of the 60-foot strip in question where the same enters Balboa avenue. Defendant Virgil McCombs each year plowed up the 60-foot strip, together with the rest of his property, and raised crops on all of the land, as his predecessor had done while he held title.

"The trial court found that it was the intention of the Land Company 'to create a right of way for road purposes sixty feet in width running parallel with the north and south boundaries of said quarter section midway between said north and south boundaries, and connecting the roadways bounding said quarter section on the east and west side, which roadways are now known as Hayvenhurst Avenue and Balboa Avenue respectively; . . . that for several years prior to the commencement of this action said sixty-foot strip between lots 10 and 15 has been used for road purposes by the owners of property abutting thereon and their servants, agents and employees and others who chose to use the same, and that said strip is now a well-defined roadway; that at the time the defendants acquired title to their properties said strip was being so used . . . that through mesne conveyances and on January 30, 1928, the defendant Eva F. McCombs acquired title to the east half of lot 16 except thirty feet along the north and south lines thereof for road purposes; . . . ' That as to the west half of lot 16 and the southwest quarter of lot 9, 'there was no user of that portion of the sixty-foot strip and right of way for road purposes . . . and that while the defendant Virgil McCombs has exercised all right of ownership in so far as previous use is concerned of the property from the time he has possessed it and that his predecessor in interest Rice did so from 1919, the benefit of such easement would continue in plaintiff's land and her predecessor in interest whether acts of ownership were ever exercised by the defendant McCombs and his predecessor, Rice'; that the quiet title decree 'did not affect the rights of plaintiff or her predecessors in interest to use all or any part of said sixty-foot strip for ingress and egress to and from their respective properties'; that all of the grantees mentioned in the deeds of the

60-foot strip across the entire quarter section, dated October 24, 1936, from the Land Company to the Title Company, are the owners of 'some parcel of property abutting upon said easement for road purposes, and that collectively they own all of such abutting property'; that 'at the time defendants acquired their respective properties, that they had such constructive notice as was given by the public records that a reservation for road purposes, sixty feet in width lying between lots 9 and 10 on the north, and lots 15 and 16 on the south, was reserved for road purposes by the San Fernando Mission Land Company, a corporation; that at the time San Fernando Mission Land Company, a corporation, had divested itself of all interest in said southwest quarter of said section 18, *supra,* except its interest in said sixty-foot reservation for road purposes. It had no right, either directly or indirectly, to divest any of the land owners abutting upon the hereinbefore mentioned sixty-foot strip, of their right to the free and unhindered use of said strip for road purposes and travel.' The court then found that 'the defendants, and all other owners of property abutting on said sixty-foot strip, have an equal right with plaintiff to the use of said sixty-foot strip as a roadway and passageway for ingress and egress to and from their respective properties, and to and from said Hayvenhurst Avenue and Balboa Avenue'.

"The judgment rendered herein quiets against defendants a right in plaintiff to use said 60-foot strip over defendants' land for road purposes and also orders defendants to remove all the trees within this 60-foot strip, and perpetually restrains defendants from in any way interfering with plaintiff's free use of said 60-foot strip for road purposes. From this judgment defendants prosecute their appeal.

"Respondent, in support of the judgment, argues that the reservation in the Land Company's deed to Rice and the circumstances related created an easement appurtenant to the parcel now owned by respondent; and that the abutment of respondent's parcel upon part of the terminus of the strip in question reserved in the deed to Rice was sufficient to annex to respondent's parcel the irrevocable right of its free use for the benefit of abutting landowners; and that therefore the quiet title decree against the Land Company did not divest respondent of this right, she not being a party to that action, citing *Petitpierre* v. *Maguire,* 155 Cal. 242 [100 Pac. 690];

*Syers* v. *Dodd,* 120 Cal. App. 444, 447 [8 Pac. (2d) 157]; *Prescott* v. *Edwards,* 117 Cal. 298, 303 [49 Pac. 178, 59 Am. St. Rep. 186]. Appellants now argue that the trial court erred in the conclusion of law 'that the reservations in some deeds from the Land Company of adjoining parcels of said quarter section operated to reserve for the mutual benefit of all adjoining parcels a strip of land for road purposes, comprising the south 30 feet of lots 9 and 10 and the north 30 feet of lots 15 and 16, thereby creating an easement or *quasi*-easement or right of way over defendants' land for the benefit of plaintiff's land', and that before such a strip of land extending over the entire quarter section could be said to have been reserved by the Land Company, all its deeds of adjoining parcels would necessarily have to contain reservations. The evidence shows that the Land Company conveyed three of the parcels by deeds containing no reservations, and the trial court so found. The parcels conveyed free of reservations comprise about half the length of that strip which the trial court concluded the Land Company had reserved for road purposes. The parcels conveyed without reservations are interspersed between those conveyed with reservations. The deeds containing reservations did not state that the reservations were for the benefit of adjoining parcels. If the Land Company had intended these reservations to have that effect, it would have expressly so declared in the deeds, as was done in the case of *Petitpierre* v. *Maguire, supra,* relied upon by appellant. It therefore seems clear that the benefit of these reservations was intended to be purely personal to the grantor Land Company and there is nothing to indicate a different intention. (*Taft* v. *Tarpey,* 125 Cal. 376 [58 Pac. 24].) Even were it assumed that the Land Company intended the reservations to be for the benefit of the parcels conveyed without reservations, yet the grantees of those parcels conveyed with reservations had no right of way over those parcels deeded free of reservations. Thus there could be no mutuality of benefit in the adjoining landowners. The fact that a road would be convenient to the grantees could not inject into their respective deeds an intention by the grantor to create one, when the language of the deeds showed no such intent. The intention of the parties should be determined by a fair interpretation of the grant or reservation creating the easement. (*Berryman* v. *Hotel Savoy Co.,* 160 Cal. 559, 566 [117 Pac.

677, 37 L. R. A. (N. S.) 5].) It is the general rule that in such cases it is better to get at the intention of the grantor from the language of the deed, interpreted in the light of the attending circumstances, than to conjecture the intent from the circumstances and then to make the language of the deed bend to that.

"Assuming the deeds with reservations did create a road for the benefit of the adjoining parcels, then the road grew in length as the Land Company conveyed each additional parcel by a deed containing reservations for road purposes. If this were true, each grantee would not know the extent of burden imposed by the reservation, if any, in his deed until the conveyances of all the parcels were made. But this could not be, for the extent of burden of the easements reserved was determined by the individual grants themselves. (Civ. Code, sec. 806, *C. F. Lott Land Co.* v. *Hegan*, 177 Cal. 169 [169 Pac. 1035].)

"There is no evidence that at the time of conveyance the grantees had any notice that the Land Company owned adjoining land, or that a road might be set apart out of the adjoining parcels for their mutual benefit. The map of said quarter section, recorded in 1888, showed no right of way. The individual deeds made no reference to such a road. There is no evidence that there was a use of a road to indicate its existence, nor is there any evidence that the Land Company informed the purchasers of a plan to create a road. A secret intent of the Land Company, if any, to carve a road out of the adjoining parcels conveyed for their mutual benefit could not operate to bind the grantees, else the grantees would be bound in law to investigate the subsequent deeds of the Land Company of other parcels than their own to discover this intent. However, the intention of the grantor must be determined as of the time of conveyance. Further, for such a plan to bind the grantees the intention of the grantor alone does not govern. It is the joint intent of the grantor and grantees which controls. The case of *Werner* v. *Graham*, 181 Cal. 174, at page 184 [183 Pac. 945], aptly states the rule applicable to the instant case:

" 'The intent of the common grantor—the original owner—is clear enough. He had a general plan of restrictions in mind. But it is not his intent that governs. It is the joint intent of himself and his grantees, and as between him and

each of his grantees the instrument or instruments between them, in this case the deed, constitute the final and exclusive memorial of such intent. It is also apparent that each deed must be construed as of the time it is given. It cannot be construed as of a later date, and in particular, its construction and effect cannot be varied because of deeds which the grantor may subsequently give to other parties.' (See, also, *Los Angeles etc. Co.* v. *Muir,* 136 Cal. 36, 50 [68 Pac. 308]; *McBride* v. *Freeman,* 191 Cal. 152 [215 Pac. 678]; 9 Cal. Jur., p. 248.)

"This jurisdiction is replete with authority that a grantee who takes his conveyance without notice of such a plan acquires his interest free of the burdens imposed by it. It is true that an easement may be created by estoppel and where a grantor conveys lots in a tract of land under a plan, known to the grantees, to set apart a road for the benefit of the lots conveyed, a reciprocal easement in the road passes with each lot conveyed. Under this rule, however, the grantees are not bound unless at the time of conveyance they were in some way apprised of the plan or the existence of the road. Since such an easement is generally based on the doctrine of equitable estoppel, the notice to the grantee is an essential factor. The cases demonstrate that this notice may be brought home to the grantee in various ways: by the deed itself; by a map, recorded or unrecorded, showing the road; by an open, apparent use of the road, indicating its existence; by a plat or subdivision of the tract showing the road; or by the grantor designating the road by visible markings on the ground. (*Silveira* v. *Smith,* 198 Cal. 510 [246 Pac. 58]; *Danielson* v. *Sykes,* 157 Cal. 686 [109 Pac. 87, 28 L. R. A. (N. S.) 1024]; *Syers* v. *Dodd,* 120 Cal. App. 444 [8 Pac. (2d) 157]; *Prescott* v. *Edwards, supra; Eltinge* v. *Santos,* 171 Cal. 278 [152 Pac. 915, Ann. Cas. 1917A, 1143]; *Petitpierre* v. *Maguire, supra.*) The evidence in the instant case does not disclose notice to the grantee in any of the instances above mentioned.

"As applied to the facts related, we are convinced that the evidence does not justify the application of the estoppel rule. Plaintiff has shown no title by prescription. Since the trial court found that there was no user of the easement in question, no title by prescription could have been acquired. The question of the necessity of egress and ingress is not involved. On February 23, 1922, the Land Company conveyed to the Title Company the southeast quarter of tract 9

(plaintiff's parcel). This deed to the Title Company contained no reservations. Four months later, the Land Company conveyed defendant Virgil McCombs' parcel to Rice by deed, to-wit, a deed with the reservations above referred to. This deed to Rice did not declare that the easement reserved was for the benefit of any adjoining parcel. When the conveyance to Rice was made the Land Company had already conveyed the southeast quarter of tract 9 to the Title Company. The easement reserved did not attach an appurtenance to that parcel, of which the Land Company had divested itself of title. (*Hopper* v. *Barnes*, 113 Cal. 636 [45 Pac. 874]; 9 R. C. L. 737; *Werner* v. *Graham*, 181 Cal. 174, 182 [183 Pac. 945].) Therefore, it is patent that the Land Company did not create over the southwest quarter of tract 9, or the west half of tract 16 an easement appurtenant to the southeast quarter of tract 9. Since the easement reserved in the deed to Rice was not appurtenant, then the easement was one in gross, personal to the Land Company. This quiet title judgment in favor of Rice and his successors in interest therefore was conclusive against the Land Company and its successors in interest and as plaintiff is the successor in interest of the Land Company, this judgment was conclusive against her. (*Knight* v. *All Persons, etc.*, 32 Cal. App. 381, 386; *Riverside Land & Irr. Co.* v. *Jensen*, 108 Cal. 146 [41 Pac. 40]; Code Civ. Proc., secs. 751, 1908, and 1962; *Baker* v. *Brickell*, 102 Cal. 620, 624 [36 Pac. 950].)

"In conclusion, it may be thus summarized: The reservations for road purposes in the Land Company's deed to Rice vested an easement in gross in the Land Company. The subsequent quiet title judgment for Rice vitiated all rights, title or interest of the Land Company in this easement which it had reserved. By this judgment Rice's title, theretofore incumbered by said easement, was perfected against the Land Company. This perfected title was acquired by defendant here. Since this judgment was effective to divest the title in the Land Company to the easement in question, clearly then, it was error for the trial court to conclude that the judgment was of no effect to bar the plaintiff who claims her right to the easement as a successor in interest of the Land Company."

The judgment should be unconditionally reversed.

A petition for a rehearing was denied February 13, 1941.